# Hunt's Appeal.

1. The existence of an oral ante-nuptial agreement should not be found save upon clear and convincing proof.  The burden of proof is on those who aver its existence, and they must do more than show a slight preponderance of testimony; they must adduce that which will be satisfactory when considered with the counter-testimony.

2. In a contest between the widow and children of a decedent as to the existence of an ante-nuptial contract between the widow and the decedent, providing that the survivor should claim no portion of the other's estate, the parties to the controversy are not competent witnesses under the proviso to the Act of April 15th 1869, Pamph. L. 30.  The decedent is to be considered as the assignor of the thing or chose in action.

3. In such case, declarations made by the decedent in his lifetime, to the effect that there had been no such contract, are admissible in evidence on behalf of the widow.

4. Prior to the appraisement of a decedent's estate, his widow gave written notice to the administrators of her claim for $300 in money out of the estate, under the Act of April 14th 1851, Pamph. L. 613.  There being no money in the hands of the administrators, she refused to take $300 worth of personal property, or to demand an appraisement of realty or personalty.  After the estate had been administered, the personalty sold and the cash balance put into the hands of an auditor for distribution, the widow again presented her claim for $300 in cash from this balance,— *Held*, that in the absence of money or notes in the administrators' hands, she should have claimed specific articles and demanded an appraisement of them, and that she was not entitled, under the Act, to her exemption from the proceeds of the sale of personalty, sold in the ordinary course of administration.

5. The Act contemplates a retention by the widow or children of property belonging to the decedent at his death, and an appraisement of it by the appraisers of his personalty.

[Hunt's Appeal.]

May 17th, 1882.    Before Sharwood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Appeal from a decree of the Orphans' Court, of *York County :* Of July Term, 1882, No. 86.

Appeal of Euphemia D. Hunt (formerly Venus), from a decree of said court, dismissing her exceptions to, and confirming the report of, an auditor appointed to distribute the balance of the estate of Henry Venus, deceased, which appeared by the account of Cornelius Webb and Henry H. Venus, administrators.

The following were the material facts :    Upon the death of Henry Venus, intestate, and the confirmation of his administrators' account, J. W. Latimer was appointed auditor, to distribute the balance, which there appeared.    Before him, the widow presented a written claim for $300 in money, out of the balance in his hands, under the Act of April 14th 1851, and its supplements; and further claimed one-third of the sum remaining after deducting the $300.

The evidence adduced showed, that prior to the appraisement the widow, who subsequently married again, had given written notice, afterward mislaid, to the administrators, of her claim for $300 in money from the estate, and that, there being no money in the administrators' hands, she refused to take any personalty, or to demand an appraisement of realty or personalty. The children and heirs contended that by a parol ante-nuptial contract between Henry Venus and Euphemia, his wife, it was mutually agreed that, upon the death of either, the survivor should not claim any portion of the other's estate.    They further contended, that the widow's claim for $300 was not made in the proper time or manner, and that, having failed to demand an appraisement of personalty, selected to be retained by her, in the absence of money in the administrators' hands, she could not demand her exemption from the balance in the hands of the auditor.

The auditor reported, inter alia, as follows :

"First, as to the $300 claim, the auditor is of opinion that the widow's claim to $300 in money, out of the balance of this account, cannot be sustained.    .    .    .    The law seems to contemplate a retention, by the widow or children, of property belonging to the decedent at his death, and the appraisement of it by the appraisers of decedent's personalty.    But it must be of something owned by decedent at his death :    Witmer's Appeal, 2 Pearson 473.    She can demand it in money or notes, if there be such, and then there need be no appraisement ; but if there be no money or notes, and she desires the exemption in personalty, she must claim the specific articles, and demand an appraisement of them, and there is no provision in the Act of Assembly, on which her claim is based, for a demand by her of

the proceeds of the sale of personal estate sold by the adminis·
trators, in the ordinary course of administration.    These con-
clusions are sustained by Witmer's Appeal, supra; Davis'
Appeal, 10 Casey 256 ; Baskin's Appeal, 2 Wr. 65 ; Hufman's
Appeal, 31 Sm. 329 ; Seller's Estate, 1 Norris, 153.    They are
unshaken by Kirkpatrick's Estate, 5 Phila. 98, or Larrison's Ap-
peal, 12 Casey, 130, which simply decides that no appraisement
is necessary when the claim is made out of money or securities
on hand at the time .  .  .  .    Having declined to retain any
of the personalty, having refused an appraisement of it, having
claimed her exemption in money, and the evidence being that
there was no money on hand belonging to decedent at his death,
the auditor is of the opinion that the widow cannot claim, in
this distribution, $300 of the proceeds of personalty sold by the
administrators in the ordinary course of administration.    This
conclusion is independent of the alleged ante-nuptial contract.

    "If the decedent and Miss Webb made an ante-nuptial con-
tract, by which it was agreed that at his death, she, surviving,
should receive no part of his estate ; and at her death, he, sur-
viving, should receive no part of her estate (as alleged by the
children), the effect of such an ante-nuptial agreement would
be to deprive her of any right under the exemption law :    Tier-
nan *v.* Tiernan's Executors, 37 Leg. Int. 184.    Same case
reported under name of Tiernan *v.* Binns, 11 Norris 248.

    " Second.  Was there then such an ante-nuptial agreement ?
.  .  .  .  To prove the existence of the alleged contract, two
of decedent's daughters, claimants in this distribution, and two
sons, who were also administrators and claimants, and the hus-
band of a daughter, a claimant, were called, and testified to
matters occurring in the life-time.    To disprove its existence,
Mrs. Hunt, the widow of the intestate, claiming against the
alleged contract, was called, and testified to matters occur-
ring in the life-time.    On behalf of the children, it was con-
tended that as they were not claiming as creditors, were not
seeking to charge the estate with any debt or liability incurred
in the life-time, they were within the exception to the proviso
to the first section of the act of April 15th 1869, and were
competent witnesses to testify to matters occurring in the life-
time.    But that the widow was seeking to charge the estate,
occupied the position of a creditor of the estate seeking to set
aside a contract of the intestate, made in his life·time, and there-
fore incompetent.

    " On behalf of the widow, it was contended, that she was not
seeking to charge the estate as a creditor, but that she occupied
the same position as the children, viz.: that of a party on whom
a portion of the right of deceased owner had devolved by opera·
tion of law on his death ; that if the children were competent,

she was competent, the nature and character of her interest in the event of this proceeding being the same as theirs. But it was earnestly insisted that the children were not competent. After a careful consideration of all the authorities, your auditor has come to the conclusion that the children and the widow are all alike competent witnesses to testify as to the facts occurring in the life-time of the intestate. . . . Were the widow and children claiming as creditors, they would all be alike incompetent to testify to matters occurring in the intestate's life-time : Hoopes v. Beale, 9 Norris, 82 ; Taylor v. Kelly, 30 Sm. 95 ; McBride's Appeal, 22 Sm. 480; Gyger's Appeal, 24 Sm. 48. Claiming, as they all do, by devolution on the death of the former owner, they are all within the exception to the proviso of the 1st section of the act of April 15th 1869, and all alike competent. The evidence adduced to establish the existence of the alleged ante-nuptial contract, consists solely of the acts and declarations of the husband and wife during his life, and of her acts and declarations after his death. The evidence to disprove its existence solely of acts and declarations of the husband during the time the marriage relation existed, and the testimony of the widow in her own behalf before the auditor.

" The auditor has come to the conclusion that the declarations of Mrs. Venus, testified to by Dr. D. C. Eberhart, though made in the absence of her husband, and those testified to by B. F. Koller, made in the presence of her husband, as to the alleged ante-nuptial agreement, are competent legal evidence against her in this distribution, being clearly against her interest : Hollinshead v. Allen, 5 Harris 285 ; McKee v. Jones, 6 Barr 425 ; Jones v. McKee, 3 Barr 497.

" That the husband's declaration, 'Yes, that was our bargain,' testified to by Koller, is also competent evidence. The statement was made in the wife's presence, in direct response to a similar statement made by her ; and was against his interest at the time it was made, involving as it did a surrender of his right to her personalty if he should survive. The interest of each party during the married life, involved in the existence or non-existence of the alleged agreement, consisted solely of the right to the property of the other which would devolve on the survivor. The declaration of the husband, testified to by Koller as having been made in the wife's absence, though against his interest, are not evidence against her in this proceeding : Jones v. McKee, 3 Barr 497–500. . . . The declarations of decedent testified to by Joseph Stermer, George H. Stermer, Winfield Flury, Valentine Trout and Charles Metzel, (to whom he declared that he had made no marriage contract), are not, in your auditor's opinion, competent legal evidence for the purpose for which offered. They were manifestly in his own

interest if he survived, and not against his interest in any possible event. It is true that the children are claiming here under him, and that in many cases the declaration of a former owner against his interest, respecting the subject matter in dispute between those on whom his rights have devolved by death and others, are evidence against the former. But here both parties are claiming by devolution at the death of the former owner, and the declarations, though against the interest of the one party, were in his favor, if he had survived. Your auditor is constrained to reject them. . . .

" We have then in this case to show that the alleged ante-nuptial contract was made between this intestate and his intended wife, Miss Euphemia D. Webb (now Mrs. Hunt), her statement made soon after the marriage to Esq. Koller, and the husband's statement made at the same time, in her presence and in response to and corroborative of her declarations; also her statement made several years later, in the absence of her husband, to Dr. Eberhart, at a time when she was seeking his advice in regard to the proper method of disposing of her estate; also her corroborative declarations during the marriage to Mrs. Trout and Mrs. Bowman.

" As against the contract, we have her positive denial on oath of having made such a contract at all, and of the alleged declarations testified to by Koller and Eberhart.

" In view of her interest in the matter, and of the fact that Koller and Eberhart are entirely disinterested, your auditor is of the opinion that the weight of the evidence is in favor of the alleged ante-nuptial contract. He, therefore, finds that prior to their marriage, and in contemplation and consideration of it, this intestate and his intended wife, Miss Euphemia D. Webb, entered into a contract, by which it was agreed that in case of the death of either, the property of the one so dying should go to his or her heirs, free from any claim by the survivor; that the widow is bound by her agreement, and estopped by it from claiming any part of intestate's estate in this distribution."

The auditor appended a schedule of distribution in accordance with this report, and also a " first alternative distribution," to apply in case the court should decide against the existence of an ante-nuptial settlement and against the widow's claim for $300 exemption.

Exceptions to this report filed by Mrs. Hunt were dismissed by the court, WICKES, P. J., delivering the opinion. Whereupon she took this appeal, assigning for error: The refusal of the court below, to sustain her claim for $300 exemption money out of the balance in the auditor's hands; the dismissal by the court of her exceptions to the action of the auditor in rejecting and admitting evidence as above; and of her exception to the

finding of the auditor, that an ante-nuptial settlement was sufficiently proved.

*Cochran & Hay* and *Geo. W. McElroy,* for appellant.—
The widow's claim to $300 is a gift which the Act of
Assembly bestows upon her, and has nothing to do with the
expense of administration : Kirkpatrick's Estate, 5 Phila. 98 ;
Larrison's Appeal, 36 Pa. St. 130 ; Seller's Estate, 1 Norris 153.
To establish a parol ante-nuptial contract the proof must be
clear and conclusive.　Admissions or declarations by the husband
or wife are not actual and positive proof : Laut's Appeal, 9 W.
N. C. 209 ; and after the death of either party they are not
admissible evidence against the survivor : Murphy *v.* Hubert, 4
Harris 56 ; Jones *v.* McKee, 3 Barr 496 ; Smith *v.* Scudder, 11
S. & R. 325 ; and Thomas *v.* Maddan, 14 Wright 261.

*John Blackford* and *W. F. Bay Stewart,* for appellees.—
By refusing to take any of the personalty and waiting until
it had been converted into cash in the regular course of
administration, the appellant has lost her right to the $300
exemption.　The demand is too late after the expenses of a sale
have been incurred : Witmer's Appeal, 2 Pearson 473 ; Davis'
Appeal, 10 Casey 256 ; Baskin's Appeal, 2 Wr. 65 ; Hufman's
Appeal, 31 Sm. 329.　Her subsequent marriage is also a
sufficient bar to her claim : Tiernan *v.* Binns, 11 Norris 248. The
ante-nuptial contract was found as a fact by the auditor and was
sufficiently established by the evidence : Gackenbach *v.* Brouse,
4 W. & S. 546.

Mr. Justice TRUNKEY delivered the opinion of the court
October 2d 1882.

This controversy is between the widow of Henry Venus and
his children.　She claims, out of the assets for distribution,
$300 under the exemption law, and one-third of the balance
under the intestate laws; they claim the whole, alleging she
waived her right to the exemption, and that she made an
ante-nuptial contract with Venus, that the survivor should take no
part of the other's estate.　The auditor and court ruled that the
parties claim by devolution, and, therefore, are competent
witnesses under the act of April 15th 1869.

It is true that the widow claims one-third by devolution,
and so do the children their distributive shares ; but that this is
not the whole case is manifest from the objection made by the
children to the competency of the widow as a witness, namely,
she was seeking to charge the estate and occupied the position
of a creditor, seeking to set aside a contract of the intestate
made in his lifetime.　The basis of the objection was the real
or pretended contract.　That aside, nothing was in the way of

the widow taking the third part by operation of law. That established, the children took that third by virtue of the contract. It is admitted that if she were a creditor of the estate, claiming under a contract, that she could not testify in her own behalf, nor could they against her. By the settled construction of the proviso to the first section of the act of 1869, the act does not apply to any civil proceeding when such contract is sought to be enforced. Where one of the parties to a contract is dead, the issue arising thereon between the survivor and the representatives of the deceased is excepted out of the operation of the act. Here it is not the widow who claims a contract; she denies it, but the children allege one which defeats her and inures to their benefit. Their right under that contract passed to them from the decedent by law, and he is the assignor within the meaning of the statute. No disguise can conceal the real issue, which involves the simple inquiry and no other, whether Venus and Euphemia Webb made an ante-nuptial contract that the survivor should take no part of the estate of the deceased. Any action or proceeding for the determination of that issue, is not within the act allowing parties in interest to be witnesses.

At different times and to a number of persons Venus declared that he had no marriage contract or bargain with his wife. To one he remarked, after denying that he had such agreement, that he had children by his former wife, and that if he dropped off his wife would come in for what the law allowed her; also that if she died first, he would take what the law allowed out of her estate. All these declarations were rejected, for the reason that "they were manifestly in his own interest if he survived, and not against his interest in any possible event." The very point in dispute was the making of the alleged contract, averred by one party and denied by the other. Had the point arisen in the lifetime of Venus, his wife could have proven his admissions that there was no such contract, whether such admissions at the time they were made were self-disserving or self-serving. They were offered against those who actually claimed under the contract, no matter what was the form of their claim, and whose right to the property or money in dispute hung upon the establishment of it. Clearly one of the alleged parties had the right to prove the other's admissions that they had made no such contract or agreement.

The testimony consists entirely of declarations and acts of the parties after their marriage, and while they felt the weight of the displeasure of his children because of the marriage. But once did they admit the contract in presence of each other, and then, evidently, to be communicated to his children to effect their reconciliation: they did not become reconciled. Afterward, repeatedly, and to within a few months of his death, in con-

1882] OF PENNSYLVANIA. 597

versations with his neighbors Venus explicitly denied that he had made any contract of the kind. Had the auditor not been constrained to reject a portion of the testimony, doubtless he would not have been " of the opinion that the weight of the evidence is in favor of the alleged ante-nuptial contract."

An oral ante-nuptial agreement should not be found, save upon clear and convincing proof. The burden is upon those who aver it, and they must do more than show a slight preponderance of testimony—they must adduce that which will be satisfactory when considered with the counter testimony, or the proof will be deemed insufficient. Rejecting the widow's testimony with the other that is incompetent, we think the weight of the competent evidence is against the alleged contract, and certainly not sufficient to warrant its finding.

We are not convinced that there is error in the finding of fact, or applications of the law, relative to the widow's claim for $300 under the Act of April 14th 1851, and its supplements.

Decree reversed, and it is now ordered and decreed that distribution be made as stated in the "First Alternative Distribution" reported by the auditor. Costs of appeal to be paid by the appellees. Record remitted for the enforcement of this decree.