## Parcell *versus* Grosser.

109    617
30 SC  144

A. entered into a written agreement with B. for the sale to B. of certain real estate. B. entered into possession but received no deed therefor, A. retaining the same under the agreement as security for the unpaid purchase money, which was to be paid in two years, when the conveyances were to be made. In an action by A. against B. to recover the unpaid purchase money, B. offered to prove that at the time of the written agreement a parol agreement had been made by which A. also retained a policy of insurance, which he had taken out on the buildings previous to the agreement of sale, and which had two years to run, as further security for the purchase money; that by his negligence in failing to comply with its conditions, it had become void; that a year after the agreement the buildings had been destroyed, and a loss occasioned B. equal to the unpaid purchase money. *Held*—

(1) That B.'s offer of evidence was not a parol variance of the written agreement of sale, being distinct therefrom and collateral thereto.

(2) That it disclosed a good defence to A.'s claim, as the proceeds of the policy, had it been kept alive, would have been held in equity by A. as trustee for B.

(3) That it was incumbent upon A. to comply with the conditions of the policy, and his negligent failure to do so, and its consequent loss to B. were a good defence *pro tanto* to A.'s action.

April 21st, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

ERROR to the Court of Common Pleas of *Schuylkill county:* Of July Term 1884, No. 29.

This was an action of ejectment by Owen Parcell against August Grosser to enforce the collection of a balance of purchase money alleged to be due by Grosser to Parcell on a sale of certain real estate in Schuylkill county.

On the trial, before GREEN, J., it appeared that in March, 1872, Parcell, who was the owner of the said real estate, entered into a written agreement for its sale to Grosser for $2,200, of which $1,000 was then paid. The agreement stipulated that Parcell on or before March 29th, 1874, would convey to Grosser the said premises, and that Grosser would pay the balance of the purchase money in two equal payments of $600 at the expiration of one and two years respectively from

the execution of the agreement. The said payments were "declared to be a condition precedent to the execution of the deed or deeds of conveyancing aforesaid by the said Owen Parcell." Grosser at once entered into possession, and never received a deed. It was admitted that the $1,200 balance of purchase money was never paid, and this action was brought to enforce its collection.

Defendant offered to prove by parol testimony that at the time he made the contract for the purchase of the lot in question there was a policy of insurance upon the building erected upon this lot for about $1,500; that the policy had some two or more years to run; that in order to secure the purchase money unpaid upon the contract, it was agreed between Parcell and the defendant that Parcell should retain the policy of insurance as collateral security for the payment of the balance of the purchase money, and that Parcell did retain it; that the assessments made by the company upon Parcell after the purchase was made, were paid by the defendant at the request of said Parcell, and in pursuance of the original contract by which he was to retain this policy as security for the purchase money; that the next year after contract was made, the building upon which the insurance was effected burned down, and that the defendant then ascertained for the first time that the company had declared the policy forfeited by reason of neglect of Parcell to return the policy to the company to get its assent to its continuance, together with the further fact that shortly after the transfer, after this contract was made, the company had notified Parcell that they would not agree to his holding the policy as security, and that he neglected and refused to notify defendant of such determination of the company; defendant, in good faith supposed that Parcell had held this policy upon his property as a valid policy, and by reason of that, defendant could not obtain any insurance upon the property, but he learned after the destruction of his property by fire that the company had declared the contract of insurance forfeited. To be followed by evidence that the building upon which this insurance was effected was of more value than the purchase money remaining unpaid.

Objected to by plaintiffs as a parol variance of the written contract of sale of the parties. Objection overruled and testimony admitted. Exception. (First assignment of error.)

The defendant by himself and four other witnesses then produced evidence in support of his offer, which was contradicted by the plaintiff. The court submitted the evidence to the jury, charging them that if they found that the failure to realize from the policy of insurance was due to the negligence of the plaintiff in failing to comply with its conditions, in that

event their verdict should be for defendant, *aliter*, for the plaintiff.

Verdict for defendant and judgment thereon. The plaintiff thereupon took this writ of error, assigning for error the admission of the testimony *ut supra*, and the instructions of the court.

*James Ryon* and *David A. Jones* for the plaintiff in error.

*John W. Ryon*, (with him *William A. Marr*), for the defendant in error.

Mr. Justice STERRETT delivered the opinion of the court, October 5th, 1885.

If it were not for the alleged parol agreement in relation to the insurance on buildings, effected by plaintiff prior to the contract of sale, he would undoubtedly have been entitled to a verdict for the premises described in the writ to be released on payment of the residue of purchase money, $1,200, and interest, within such time as the jury might have considered reasonable. As to the terms of the written contract of March 30th, 1872, there is of course no dispute. Plaintiff covenanted therein to sell and convey the premises in controversy to defendant, on or before March 29th, 1874, and in consideration thereof the latter agreed to pay $2,200, $1,000 in hand and the residue in two equal annual payments with interest, with the privilege of paying the whole $1,200 within one year or less from that date. It is further provided that payment of the purchase money is "a condition precedent to the execution of the deed or deeds of conveyance" by plaintiff.

It is conceded the hand money was duly paid, but neither of the deferred instalments has ever been actually paid by defendant. His contention is that in equity, as between himself and plaintiff, they have been paid and satisfied; that if plaintiff had acted in good faith in regard to the insurance policy he would have received the insurance money for the buildings which were destroyed by fire before the first deferred payment matured; that as the result of his bad faith and gross negligence, insurance money fully equal to the unpaid instalments, and which should have been collected and applied in satisfaction thereof, was wholly lost.

Shortly before the contract of sale, plaintiff had effected an insurance on the buildings for $1,500, and testimony was received, under exception, tending to prove that it was verbally agreed between the parties that he should continue to hold the policy as collateral security for the unpaid purchase money, etc.; that in pursuance of a mutual understanding

that the arrangement was partly, at least, for the benefit of defendant, he at plaintiff's request shortly before the fire paid the only assessment that was made on the policy after the contract of sale ; that on the day after the fire, plaintiff in response to notice from defendant visited the premises, and by his acts and declarations assured him that he would attend to collecting and properly applying the insurance money. The testimony tending to prove these and other corroborating facts and circumstances was fairly submitted to the jury with proper instructions, under which they rendered a verdict for defendant. In so doing, they must have found the facts, in relation to the insurance, as claimed by defendant. It was therefore the duty of plaintiff to have taken the proper steps to collect the insurance money. It is contended, however, on his behalf that, assuming the facts to be as the jury must have found them, no such duty rested on him; and, moreover, that by the contract of sale, the policy, not being transferred, became void. There is nothing in the facts of the case or the law applicable thereto, that warrants either of these conclusions. The effect of a mere contract of sale, on the relative rights of the parties thereto and their interest in existing policies of insurance, was considered in The Perry County Insurance Co. *v.* Stewart, 7 Harris, 45 ; Insurance Co. *v.* Updegraff, 9 Harris, 513 ; Reed *v.* Lukens, 8 Wright, 200 ; Hill *v.* Cumb. Valley M. P. Co., 9 P. F. Smith, 474, and cases therein referred to. In the case first above cited it is said, " where one has entered into an agreement for the sale of his insured property, but has not made a conveyance thereof, nor received the purchase money, his interest in the property and policy is not thereby parted with, so as to bar his right of action on the happening of a loss." It is also held in Reed *v.* Lukens, *supra*, that " the money due on a policy of insurance for a loss by fire, occurring between the date of such contract and the time fixed for delivery of deed, as between the company and the vendor by whom it was insured, belongs to the latter, but as he is a trustee for the vendee he must account in equity to his *cestui que trust* for the insurance money." The same principle is more fully elaborated in Hill *v.* The Cumb. Val. M. P. Co. *supra*. This case is also authority on the point that the policy was not avoided by the contract of sale. There has been something said about the company having cancelled the policy, but we fail to see anything in that position. They had no right to cancel it without returning a ratable proportion of the premium to the assured for the unexpired time, which was not done.

The conclusion of the jury was warranted by the law, and the facts found by them. The only question as to which we

[Landis v. Roth.]

had any doubt, is whether the admission of evidence to prove
the parol agreement as to the insurance policy, impinged on
the well known rule against the admission of parol testimony
to vary the terms of a written contract. We are not satisfied
it did. Moreover, the agreement in relation to the insurance
was collateral to and not an essential or necessary part of the
contract of sale. It practically constituted a separate and
distinct agreement, which was afterwards recognized by the
parties and acted upon when plaintiff called on defendant to
pay the insurance assessment. The evidence as to their un-
derstanding in regard to the policy of insurance was full, clear
and explicit, supported by four witnesses, one of whom was
plaintiff himself.

The case was well tried, and the result reached by the ver-
dict was just and equitable. There is nothing in the case to
indicate that the plaintiff in the exercise of reasonable dili-
gence would not have received the insurance money or at
least enough thereof to satisfy the deferred payments. It
was his duty to do so. Instead of performing that duty, he
acted in bad faith, misled the defendant, and the result was
the insurance money was lost. The jury came to the conclu-
sion that plaintiff should bear the loss, and in that we think
they were right.

                                        Judgment affirmed.