## W. S. Taylor *v.* John Sattler, Appellant.

*Contract—Evidence—Parol agreement.*

In an action upon a parol contract to clean out an oil well which the plaintiff had previously agreed by written contract to complete the drilling of, the written contract may be admitted in evidence merely as explanatory of the testimony relating to the verbal contract on which the suit is brought.

*Practice, C. P.—Amendment—Parties.*

Where the record is amended so as to strike out the name of one of the parties defendant, the plaintiff's statement, being part of the record, is to be considered amended so as to conform thereto. If a more formal amendment is required, it may be allowed and filed in the Supreme Court, so as to make the trial on the merits conform to the record and the evidence.

*Contract—Partnership—Evidence—Parol contract.*

In an action upon a parol contract to clean an oil well entered into by the plaintiff himself, it appeared that the plaintiff and his partner had a written contract made prior to the parol contract of the plaintiff, to complete the drilling of the well. *Held*, that as the written contract was not involved in the suit upon the parol contract the question of partnership was not in the case.

Argued Nov. 3, 1896. Appeal, No. 128, Oct. T., 1896, by defendant, from judgment of C. P. No. 2, Allegheny Co., April T., 1895, No. 33, on verdict for plaintiff. Before Sterrett, C. J., Williams, McCollum, Mitchell and Fell, JJ. Affirmed.

Assumpsit upon a parol contract to clean out an oil well. Before White, J.

Morris Einstein was originally joined as a co-defendant, but the record was amended by striking out his name before trial.

At the trial it appeared that on September 30, 1890, plaintiff entered into a written contract with John Sattler and Morris Einstein as follows:

" Articles of agreement made and entered into this 30th day of September, 1890, between Mr. John Sattler and M. Einstein, of the first part, and Mr. Taylor, of Petrolia, of the second part. The party of the second part agrees to complete a well on Opperman farm, Ohio township, to the depth of two thousand feet, and if oil or gas is found in paying quantities in the one hundred feet, the parties of the second part are willing to cease, at the option of the parties of the first part.   Parties of the second part will furnish all tools necessary to drill said well except boiler and engine and pipes to connect with steam and pipes for water well adjoining the derrick.

" The party of the second part agrees to drill said well for $1,333.33.   The party of the first part agrees to pay party of the second part $200 when the casing is in the well, and balance when the well is completed.   The party of the second part agrees to start with due diligence.   John Sattler, W. S. Taylor."

The evidence tended to show that subsequently plaintiff and Sattler alone entered into a parol agreement under which plaintiff cleaned out the well so that the drilling could be commenced.

Plaintiff's counsel offered in evidence the written agreement, Exhibit No. 1, "not as documentary testimony, but simply in connection with the testimony."

Defendant's counsel objected because " the written agreement has been abandoned, and the action is now on a verbal contract."

By the Court: The agreement is not the basis of this action as it is now presented before the court, but the verbal agreement alleged by the plaintiff to have been made with Sattler was in consequence of this written agreement, and so far as it bears upon the verbal arrangement between the plaintiff and Sattler it is competent evidence, and for that purpose, and that alone, it is admitted in evidence.   To which the defendant excepts, and at his instance bill was sealed. [1]

The court charged in part as follows :

[But the plaintiff does not rely on that written contract.   It is put in evidence simply by way of explaining his testimony, as to what was said as to depth of the well and its condition. He relies upon a verbal arrangement with the defendant, after he had commenced work on the well.

Now, there has been a great deal of testimony here, gentle-

men, that does not throw much light on this case, and there was a great deal of contradiction in the testimony, on immaterial matters, and there is some contradiction on material matters; but what is the real issue in this case? It is whether the plaintiff did the work claimed for in this case, under a verbal contract with the defendant. He claims here some $2,300, nearly double his contract—for what? For trying to clean out that well. He says when he went there to work he found it plugged up, or, at least, caved in, about six hundred feet down. He went to the defendant, told him about it, and that he would need some tools to take out the tubing, and on two or three other occasions went to him and told about their troubles and difficulties. What agreement was there, now, between these parties? That is the question, gentlemen—the main question —in this case. What was the agreement?

Now, the substance of the plaintiff's testimony is this: That when he spoke to the defendant about the condition of the well —and he said he told him he could not go on under that contract—the defendant said to him: "Go on, and I will do what is right, and you shan't lose." I think that is the substance of his testimony, but, gentlemen, you will not take it from me; take your own recollection of what the testimony was. Now, what did that mean? If the defendant did say that to him, what did he mean by that, and what was the understanding between the parties? Was it that the plaintiff could go to any expense he pleased, and continue to work at that well for six months, and that the defendant would pay for all his expenses and all his men, and all his own labor? Was that what was meant by that? Or was it that, when he said he would have to have some tools, to take out the tubing, the defendant agreed to pay for that? Under the statement of the plaintiff, he expected to have a well clear, down one thousand four hundred and fifty feet; but this obstruction there would have to be removed, and he would have to have special tools for it, because, he said, he had no tools there for it. Now what did the defendant mean by saying: "I will do what is right; you shan't lose?" Was it: "Get what tools may be necessary to draw the tubing, and I will pay for that;" or was it to give him unlimited time to go on and work six months there? And did the defendant expect to be bound to pay for all his expenses and all his men

and time, and his own labor for that time ? What was really the understanding between the plaintiff and defendant in this con-versation ?

There is some evidence that, at different times, the plaintiff said they were getting along very well. According to his own testimony, they were never getting along well at all. Never from the start did they get along well; it got worse and worse all the time.

They commenced some time in the early part of October, and continued on until the latter part of March, 1891, between five and six months working at that well.

Well now, gentlemen, bearing on that question as to what was the understanding between the parties, what occurred at Mr. Wallace's office has a very material bearing on this case. There is contradiction between the plaintiff and the defendant and Wallace as to some things that occurred there at the office, but in some things there is no contradiction. The plaintiff then said that he would give up this contract, or abandon it, and I believe that that is not contradicted—that that expression was used, or testimony to that effect. The plaintiff admits that at that conversation the defendant claimed and wanted all the tools that were there at the well, and threatened him, if he did not give them, that he would send the sheriff on him. Accord-ing to the defendant's testimony, if you believe it, he had already paid some $600 or so to the plaintiff, in money and for tools that he had got, and had that claim, and contended for damages because he had not completed his contract.

Now, what is the position of the plaintiff there ? And that is about the 1st of April, 1891, just the time that he quit work-ing there. Does the plaintiff there, at that time, say to Mr. Sattler: " Why, you owe me $2,000 or so for work at that well. I want my pay," —anything of that kind said ? Does the plaintiff here say that, at that time, he demanded any money from the defendant ? If he did not, at that time, claim any-thing due to him, it has a very important bearing upon this case, as to whether there was such a contract as he says now there was, in September, 1890.

Another fact may bear on this controversy. It seems that a day or two after that interview at Wallace's office, Sattler brought suit against him for these tools there at the well, claim-

ing—well, he didn't bring the suit for the tools, but brought a
suit claiming that the plaintiff owed him, and attached all of
these tools and things there, to secure his claim.   It seems that
after a couple of trials, perhaps, in the other courts, the plaintiff
got a verdict against Sattler for taking those tools, or for some-
thing of that kind.    That suit, as the counsel for the defend-
ant say, has never yet been finally determined; but the verdict
of the jury was in favor of Taylor, the plaintiff, in that contro-
versy.    Even then no suit is brought by Taylor against Sattler.
This suit that we are trying was brought in January of 1894,
some two years and nine months after he had quit working at
the well, and after this suit or litigation in reference to the
other matters.

I say these are facts, gentlemen, for you to consider in con-
nection with the testimony now.   Suppose the defendant did
say: "Go on and you shan't lose; I will do what is right."
Suppose he did? What was the understanding between the
parties about that?   Was it to say to the plaintiff: "Go on
under your contract, and if you are at any additional or extra
expense in trying to get at this, why I will pay that."   Was
it to go on any length of time he pleased, at any expense he
pleased and "I will pay you for all your expense and all your
men, and this at the rate of $4.00 a day all the time you are
there?"

Of course, gentlemen, you will bear in mind that the defend-
ant practically denies that he made any such arrangement what-
ever.

If you find, gentlemen, that there was an arrangement—a
verbal arrangement—between the plaintiff and defendant in
reference to cleaning out this well, what was it, and to what
extent did it go; and how much, if anything, is due to the
plaintiff in consequence of it, bearing in mind what is said by
the defendant—that he has already paid, as he said, between
$600 and $700 in consequence—$700, I believe, in money to
the plaintiff, and the balance of it in tools that he paid for for
the plaintiff? I do not know whether it is controverted that
that amount of money was paid.] [2]

Defendant's points and answers thereto were as follows:
1. That as the evidence shows that plaintiff and L. N. Sawyer

were partners in the contract sued upon, the plaintiff cannot recover in this action. *Answer:* Refused. [3]

2. That as the plaintiff in this case attempts to vary a written contract, or substitute a verbal one for a written, the proof must be clear, conclusive and positive. *Answer:* Refused. [4]

3. That in any event the plaintiff cannot recover for the wages of his partner, L. N. Sawyer, and that item of plaintiff's claim should be stricken out. *Answer:* Refused. [5]

Verdict and judgment for plaintiff for $1,268. John Sattler appealed.

*Errors assigned* were (1) ruling on evidence, quoting the bill of exceptions; (2–5) above instructions, quoting them.

*James Fitzsimmons,* with him *J. K. Wallace, A. H.* and *H. H. Rowand,* for appellant.

*J. M. Stoner,* with him *F. R. Stoner,* for appellee.

OPINION BY MR. CHIEF JUSTICE STERRETT, January 4, 1897 :
This action of assumpsit is not on the written agreement to complete the oil or gas well, but on an alleged verbal contract to clean out the well and put it in the condition in which, as alleged by plaintiff, it was represented to be in at the time the written contract was executed. There was therefore no attempt to substitute a verbal contract for a written one. It was alleged that the verbal agreement was made in consequence of the written one, and the admission of the latter in evidence was merely as explanatory of the testimony relating to the verbal contract on which alone plaintiff relied. As thus restricted it was not improperly admitted.

When the record was amended by striking out the name of the other defendant, mentioned in the written contract, the plaintiff's statement—part of the record—is to be considered amended so as to conform thereto. If a more formal amendment were required, it may be allowed and filed here, so as to make the trial on the merits conform to the record and the evidence.

The testimony as to plaintiff's partnership with a third party referred to the written contract, and as that instrument was

not involved in this action, the question of partnership was not in the case.

Plaintiff's right to recover depended on satisfactory proof of the alleged verbal contract; and that was a question of fact for the jury.   After saying to them that there could be no recovery on the written contract, because it had never been completed, etc., and referring to the somewhat conflicting testimony as to the verbal contract, the learned trial judge submitted the question, whether, as claimed by plaintiff, there was a verbal agreement between him and the defendant, as to cleaning out the well, etc., and if so what were its terms, and how much if anything, was due the plaintiff thereunder.   By necessary implication the fact that there was a verbal contract, as claimed by plaintiff, has been established by the verdict, and the amount due thereunder has been found.   There appears to be no substantial error in the proceedings leading up to these conclusions of fact; nor is there anything in either of the specifications of error that requires further discussion.

Judgment affirmed.