Krug's Estate.

*Contract—Antenuptial agreement—Evidence.*

A husband will not be permitted to participate in his deceased wife's
estate, where four disinterested witnesses testify to declarations of the
husband at different times, that there was an antenuptial contract between
him and his wife that neither should claim nor receive any part of the
estate of the one who died first, and it further appears that at the time of
their marriage the husband and wife were advanced in life, and that the
wife continued to manage her own estate until her death.

Argued May 16, 1900. Appeal, No. 170, Jan. T., 1900, by
John Krug, from decree of O. C. York Co., sustaining excep-
tions to auditor's report in the estate of Agnes Krug, deceased.
Before, GREEN, C. J., McCOLLUM, MITCHELL, DEAN and MES-
TREZAT, JJ. Affirmed.

Exceptions to auditor's report.

The facts appear by the opinion of BITTENGER, P. J., which
was as follows:

The exceptions are to the award by the auditor to John
Krug, the surviving husband of testatrix, $3,938.99, the one
half of the net amount for distribution, which sum should have
been awarded to legatees named in the will.

The exceptants, legatees named in the last will and testament
of the decedent, set up before the auditor an alleged ante-
nuptial contract between the testatrix, Agnes Krug, and John
Krug, her husband, claiming against the will, by which agree-
ment the said John Krug is estopped and barred from claiming
and receiving any portion of her estate.

We think the auditor is clearly in error in deciding that the evidence does not legally establish the antenuptial contract, as claimed by the legatees. Four disinterested witnesses, Abdiel McKonley, Henry L. Keagy, Ida Myers and Harry L. Myers, clearly testify that John Krug, the claimant, declared and admitted in their presence, at different times, that there was a contract between him and his wife that neither should claim nor receive any part of the estate of the one who died first.

McKonley was present at Harry L. Keagy's when John Krug said in their presence, almost two years ago, that there was such a contract between him and his wife. Mr. David Forry, who is deceased, and who was also present, remarked to him that he ought to have a written contract to the same effect, and then John Krug said, "Honest people don't need any papers, their words is good enough." In the conversation the fact that a Mr. and Mrs. Miller, rich people who had married, had a written contract, was referred to. In this conversation the particulars are fully stated, and the testimony bears the impress of truth. The conversation referred to by the witnesses Ida Myers and Harry L. Myers occurred in Lancaster county at their home, on the wedding trip of John and Agnes Krug, in the fall of the year 1891. They were both present. Mrs. Ida Myers testifies : The conversation commenced about " trouble with wills." Mrs. Krug said that she and her husband had a contract before they were married, that his property was to go to his children and her property was to go to her brothers. She appealed to her husband to say if her statement was not correct and he answered, " Yes."

Harry L. Myers, her husband, corroborates her in her testimony, except that he did not remember when Mrs. Krug said the contract was made, but he said he supposed before the marriage.

As against this testimony, which need not be quoted at length, John Krug makes a sweeping denial that these conversations or either of them, took place in the presence of the parties testifying to the same. He swears he did not make any of the declarations and admissions referred to.

While the witnesses for the legatees are not interested, John Krug is a highly interested witness, though competent to testify in his own behalf. He is contradicted by these four wit-

nesses. Besides, the circumstances in the case are confirmatory of the testimony of the witnesses for the legatees.

Here are aged people with separate estates, his a large one of about $50,000, entering into matrimony. Under the circumstances, what were the probabilities in regard to the acts of the parties relating to their said separate estates? The probabilities are that the parties, especially John Krug with his large estate, would be anxious to secure it for his children, and that the antenuptial contract, admitted by him in the conversations held at the time stated by the witnesses, was entered into by the parties before the marriage.

The auditor has found as facts, to which findings of fact there are no exceptions, that the testatrix had substantially the same amount of property at the time of her marriage to John Krug that she had at the time of her death; that she continued to keep it in the bank she was doing business with before her said marriage, a different bank from that which John Krug did business, and of which he acted as director.

He was a director of the First National Bank of Hanover, and she exercised control over her estate, as she did before her marriage, and continued her deposits with the Hanover Saving Fund Society, as she also had done prior to her marriage.

These facts found by the auditor are most consistent with the keeping and management of the separate estate of the parties by themselves respectively, and the agreement that neither was to claim out of the estate of the one who should first die.

The great preponderance of testimony, consisting of the declarations and admissions of John Krug and the other facts and circumstances, clearly establish to our satisfaction an antenuptial contract as contended for by the legatees named in the will of Agnes Krug, deceased, sufficient to estop and exclude John Krug from participating in this distribution.

This contract is proven by evidence quite similar to that in Gackenbach v. Brouse, 4 W. & S. 546, which has never been questioned.

The auditor seems to have been influenced to decide against the execution and existence of said contract on the authority of Hunt's Appeal, 100 Pa. 590, in which it is held that the existence of an oral antenuptial agreement should not be found save upon clear and convincing proof.

We do not understand that case to exact a higher degree of proof to establish such a contract, than is required legally to establish any other matter or thing which is the subject of judicial inquiry. In the last case referred to the children of a decedent, by a former marriage, attempted to set up an antenuptial contract to prevent the widow from receiving her share out of her deceased husband's estate. The courts have ever jealously guarded the rights of married women and widows. In their distress they pre-eminently require all proper protection by the courts, and it is not singular that when an attempt was made in that case, to exclude the widow from any share of her husband's estate, that the court should have required more than a slight preponderance of testimony—such testimony as would be satisfactory when considered with the counter-testimony—to find and sustain the antenuptial contract relied upon by the heirs of the husband against his widow.

Admissions of parties against interest are always admissible in evidence, and when satisfactorily proven, as in this case, will carry great weight in the determination of a case. " Indeed it is always competent to prove what a party says against his interest, about the matter in controversy: " Shirley v. Shirley, 59 Pa. 267. In the case under consideration as in Gackenbach v. Brouse, supra, the declarations and admissions of the husband are the only available proof.

Mr. Justice PAXSON in Tiernan v. Binns, 92 Pa. 248, aptly says: " I see no reason why the law should regard with disfavor an antenuptial contract, especially where, as here, it was entered into by parties each of whom was advanced in years, with separate children and separate estates. Persons so situated do not usually act from mere impulse, or contract without consideration. Such family arrangements in many instances reconcile differences, and avoid unpleasant disputes. Where they are free from fraud, there is no reason why they should not be enforced." See also Lant's Appeal, 95 Pa. 279.

Here Mrs. Krug had no children but brothers and sisters. It is well decided that the subsequent marriage is itself sufficient consideration for the contract. The measure of proof is the same established and recognized in other cases. It must be clear and satisfactory, and such we have found it to be in this case.

And now, April 26, 1900, we sustain the exceptions and set the report of the auditor aside.

*Error assigned* was the decree of the court.

*George E. Neff*, with him *Henry C. Niles*, for appellant.— If the rule that an antenuptial agreement should not be found except upon clear and convincing proof has any applicability at all, it surely must prevent the establishment of such a contract upon any such uncertain foundation of evidence as is relied upon in this case: Hunt's App., 100 Pa. 590.

*Nevin M. Wanner*, with him *George S. Schmidt*, for appellees.—Antenuptial contracts and marriage settlements are not contrary to the policy of the law, but on the contrary are favored by the courts. They need not be in writing and no special form of words or technical expression is necessary to give them effect. If the intention of the parties can be ascertained, the courts will enforce the contract, in any available manner: Tiernan v. Binns, 92 Pa. 248; Talbot v. Calvert, 24 Pa. 327; Frank's App., 59 Pa. 190; Sterry v. Arden, 1 Johns. Ch. 261; Wood v. Jackson, 8 Wend. (N. Y.) 10; Roberts v. Roberts, 22 Wend. 140; Lant's App., 95 Pa. 279; Jones's App., 62 Pa. 327; Prewit v. Wilson, 103 U.S. 22; Barnes v. Black, 193 Pa. 447; Huzzard v. Trego, 35 Pa. 9; Taylor v. Gould, 57 Pa. 152; Allen v. McMasters, 3 Watts, 181; Hoak v. Hoak, 5 Watts, 80; Harrisburg Bank v. Tyler, 3 W. & S. 373; Simons v. Vulcan Oil, etc., Co., 61 Pa. 202; Wolf v. Studebaker, 65 Pa. 459.

Declarations and acts of a party to the cause against interest are always evidence, without reference to the time when made or done: Marshall v. Sheridan, 10 S. & R. 268; Helfrich v. Stem, 17 Pa. 143; Galbraith v. Green, 13 S. & R. 85; Schall v. Miller, 5 Whar. 156; Shirley v. Shirley, 59 Pa. 267; Wiley v. Christ, 4 Watts, 196; Frank's App., 59 Pa. 190; Jones's App., 62 Pa. 327; 6 Pepper & Lewis's Digest of Decisions, 95–88; Perret v. Perret, 184 Pa. 131; Wilson v. Wilson, 137 Pa. 281; Hester v. Com., 85 Pa. 157; McClenkan v. McMillan, 6 Pa. 367; Com. v. Kenney, 12 Metc. 237; Mattocks v. Lyman, 16 Vt. 120.

PER CURIAM, May 29, 1900:

The question in controversy in this case was eminently a question of fact, to wit: whether an antenuptial parol agreement was made between the testatrix and her husband in reference to their separate estates. The testimony was all in parol and the auditor was of opinion that it was not sufficiently clear and convincing to satisfy his mind as to the fact of its having been made. The learned court below was of a different opinion and held that the evidence was sufficient to establish the contract and a decree to that effect was accordingly made. After a careful consideration of the testimony we agree with the court and not with the auditor. The opinion sets forth fully the views of the court upon the testimony and the legal conclusions which follow and we affirm the decree thereon.

Decree affirmed and appeal dismissed at the cost of the appellant.