# Downing, Appellant, *v.* Downing.

*Beneficial societies—Beneficial certificate—Beneficiaries—Change of beneficiaries—By-laws—Interpleader.*

Under an interpleader to determine the rights to a fund due on a beneficial certificate, a verdict in favor of the persons named in the certificate is proper, where the deceased had failed to comply

220, (1923).]        Syllabus—Statement of Facts.

with the regulations of the society relative to the change of beneficiaries and the society refused to waive such noncompliance.

Where the by-laws of a beneficial association, adopted in accordance with the charter, provide that changes in the certificate may be made with the consent of all living beneficiaries named therein, and that the name of a second wife may not be substituted for that of a deceased wife without the consent of the child or children named in the certificate, the member is not entitled against the objection of the association, to have the name of his second wife substituted as sole beneficiary without the consent of his children named in the certificate.

It is within the power of the member to change the beneficiary whenever he chooses to do so, subject, however, to the qualification that such right must be strictly in accordance with the by-laws of the association; otherwise the latter is not bound to recognize the new beneficiary.

*Antenuptial agreements—Burden of proof—Sufficiency.*

An oral antenuptial agreement should not be found, except on clear and convincing proof. The burden is upon those who aver it, and they must do more than show a slight preponderance of testimony—they must adduce that which will be satisfactory when considered with the counter-testimony or the proof will be deemed insufficient.

Argued October 9, 1923.    Appeal, No. 147, Oct. T., 1923, by plaintiff, from judgment of C. P. No. 2, Phila. Co., June T., 1920, No. 695, in favor of defendant non obstante veredicto in the case of Sarah A. Downing v. William J. Downing, Rebecca J. Green, Elizabeth W. Downing and Catharine L. Downing.    Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.    Affirmed.

Interpleader to determine title to benefits paid under beneficial certificate.    Before STERN, J.

The facts are stated in the opinion of the Superior Court.

The jury rendered a verdict in favor of the plaintiff. Subsequently the court, on motion, entered judgment in favor of defendants non obstante veredicto.    Plaintiff appealed.

222        DOWNING, Appellant, *v.* DOWNING.

*Error assigned* was the judgment of the court.

*Edmund W. Kirby,* for appellant.

*Edward D. Mitchell,* for appellee.

OPINION BY LINN, J., November 19, 1923:

This appeal brings up the record of the trial of an interpleader in which Sarah Downing, widow of William Downing, deceased, plaintiff, on the one hand, and decedent's children by a former wife, defendants, on the other hand, claim a sum paid into court by the Police Beneficiary Association of the City of Philadelphia. The issue was made by an amended statement of claim, and an affidavit of defense. After a jury trial resulting in a verdict for plaintiff for the full amount, the court granted defendants' motion for judgment for that amount notwithstanding the verdict; that action is assigned for error.

Decedent, William Downing, became a member of the association in 1888, accepting its beneficiary certificate in which his wife, Mary G. Downing, was named as beneficiary. She died. Subsequently, in 1905, on his application, a second certificate was issued to him, naming the present defendants, his children, as beneficiaries, and that certificate he delivered to them. He died January 17, 1920, leaving, besides these children, a widow, Sarah Downing, the plaintiff, whom he had married in 1907. The children then asserted their claim as beneficiaries under the certificate of the association, and the widow asserted hers as herein described; the association paid the money into court with the result stated.

What was said by Mr. Justice FRAZER in Bell v. Police Beneficiary Association, 270 Pa. 407, 410, applies in this case: "The purpose of the association, as stated in its charter, is to maintain a society 'for the mutual benefit and protection of its members and to provide from moneys collected therein a fund to be paid over on the

death of any member to his widow or orphans, and such or either of them, or such other person or persons as the member may have designated, and the manner of such designation, and, in default of such designation, to such person or persons as the by-laws of the association may direct.' The by-laws adopted in accordance with the authority contained in the charter designated the persons to whom benefits shall be payable and provide that transfers may be made of certificates 'heretofore issued either to his wife, child or children,......consent in writing, however, to be had of all the living beneficiaries named therein,' except in specified instances unconnected with the facts of the present case, with a further provision [section 5, article IX] that 'when a certificate has been made payable to the member's wife and child or children, and the wife subsequently dies, the member, should he remarry, shall have the right to have the name of his then wife substituted for that of the deceased wife without the consent of the child or children named in the certificate.' A plan of procedure was also provided covering cases where a change is desired and it appears the certificate is in possession of the beneficiary, who refuses to surrender it. This provision, however, is limited to cases where the desired cancellation or change is 'in accordance with and as authorized by the by-laws,' and does not affect other provisions requiring consent of the beneficiary in particular cases."

Sarah Downing's contention, averred in her statement of claim, is to the effect that about November 22, 1919, in accordance with its by-laws, Downing notified the association of his desire to have her, his wife, substituted as beneficiary in the certificate but that the association declined to make the change; that he was in good standing at his death, and that she was therefore entitled to payment. In support of that allegation, she testified that in August, 1919, at their residence in New Jersey, she and her husband were visited by one of his daughters, Mrs. Green, a defendant, at which time Downing "......

said he wanted the certificate sent down to him to Somers Point, he was unable to come up and do anything about it himself, that he had let it go too far, and wanted it sent down, he wanted to alter it, to have it fixed for me, that all the money he ever had handled would not repay me for the care I took of him in endangering my life with the disease he had." To that request, she says, the daughter, replied "all right"; that the daughter and also her husband who was present, stated they would attend to the matter and send the certificate "down to him so that he could have it transferred to me" [plaintiff]. She also testified that in the following November there was another interview about it during which the daughter informed decedent that she had consulted "Mr. Bodkin" [secretary of the association] and he "said it couldn't be changed, the by-laws could not be altered," but that her husband repeated that "he wanted it, that it [certificate] should be for me" [the widow]. Following that, on November 22, 1919, plaintiff wrote a letter to the association, which decedent signed and which the association received, requesting the association to issue a certificate substituting his wife for his daughters; nothing was said in the letter about the interest of decedent's son. On that date, Mrs. Green wrote to decedent, stating in substance that the secretary of the beneficiary association had informed her that the change could not be made unless "all the children consented." A daughter of the plaintiff by a former marriage, testified that about a year before Downing's death and also at some period not definitely stated, but antedating 1916, she heard decedent say that "when he was gone my mother should have his benefits, the police benefits." Bodkin, secretary of the association, testified that about the time the letter of November, 1919, was received by him, "some one came in, but I could not say who it was, to have the certificate transferred to this gentleman's wife" [the plaintiff]; "I told them I could not change that certificate until I

220, (1923).]          Opinion of the Court.

would have a sworn affidavit from all persons named on the certificate down there, then I would transfer it."

At that time, then, when the efforts to obtain a change ceased, neither party had any right to action by the association save upon compliance with its by-laws, and those the association declined to waive; the effect was that Downing was unable to make the change in beneficiaries because he could apparently not get the consent of his children, and he could not compel the association to depart from its by-laws: Bell v. Police Ben. Assn., 270 Pa. 407, 411. The parties then remained in precisely the same positions they had always been in, and so remained until Downing's death in good standing, which, of course, at once raised an obligation to pay the beneficiaries named in the certificate.

The learned trial judge charged the jury that "for the purpose of bringing the issue to a point where the court can consider the law," he would submit to the jury to find whether Downing's signatures to the papers in evidence were genuine and whether they had been dealt with as Mrs. Downing had testified, and, if so, the jury might bring in a verdict for her; but if the jury found the signatures were not genuine, the verdict should be for defendants.

It is clear from what has been said, that Downing's contract with the association expressly provided that the association might decline to change the name of the beneficiary without the consent of his four children who had previously been named in the outstanding certificate: "......it is within the power of the member to change the beneficiary whenever he chooses to do so, subject, however, to the qualification that such right must be exercised strictly in accord with the by-laws of the association, otherwise the latter is not bound to recognize the new beneficiary: Vollman's App., 92 Pa 50; Masonic Mutual Assn. v. Jones, 154 Pa. 107; Hunter v. Firemen's, etc., Assn., 20 Pa. Superior Ct. 605. It being undisputed that plaintiff failed to comply with the

rules requiring the consent of the beneficiaries named in the existing certificate to the issuing of a new certificate in favor of the new sole beneficiary, the decree of the court below in dismissing the bill was properly entered": Bell v. Police Ben. Assn., supra.

Appellant presents another question. It is contended that she proved an antenuptial agreement entitling her to the fund. The court received that evidence subject to objection, subsequently refused a motion to strike it out, but finally decided it could not be considered because not within the allegations of the statement of claim, and that an appropriate amendment could not be allowed because it would introduce a new cause of action.

We need not discuss that phase of the appeal further than to say the evidence is not sufficient in any event to sustain a finding that an antenuptial agreement was made. The evidence is the other way. The efforts of the decedent and his wife, shortly before his death, to have her named beneficiary, negative the claim in this suit that there was an antenuptial agreement (P. R. R. Co. v. Wolfe, 203 Pa. 269, 274), and this record also shows that her claim as originally asserted, was for only one-half of the death benefits, on some theory that by section 5, article IX, of the by-laws (quoted above from Bell v. Police Ben. Assn.), she was entitled to share equally with his children. Those facts prevent the inference of an antenuptial agreement from her statement that "he said if I should marry him he would take care of me for my lifetime; I would not have to bother with support or anything, that everything would be provided for me, and if he should pass away before I did that the Police Beneficiary would take care of me the balance of my days, that I would get $2,450 after he died." "An oral antenuptial agreement should not be found, save upon clear and convincing proof. The burden is upon those who aver it, and they must do more than show a slight preponderance of testimony—they must adduce that which will be satisfactory when considered with the counter-

220, (1923).]          Opinion of the Court.

testimony, or the proof will be deemed insufficient": Hunt's App., 100 Pa. 590, 597; Arnold's Est., 249 Pa. 348, 361.

Judgment affirmed.