Russo's Estate.

Argued April 29, 1935.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Frank F. Canuti,* for appellant.

*Julius L. Schoenberg,* for appellee.

OPINION BY RHODES, J., October 7, 1935:

Frank Russo died testate on April 20, 1932. His widow, Amelia Russo, filed exceptions to the decree of distribution of her husband's estate, and claimed that she was entitled, by virtue of an oral ante-nuptial agreement, to have a $1,400 mortgage, covering property owned by her, satisfied of record. The decree of distribution directed that this mortgage be given to the appellant, Caterina Russo Giordano.

On the rehearing before MITCHELL, J., he sustained the widow's exceptions to the decree of distribution and filed an amended decree directing that the mortgage be satisfied of record. The court in banc affirmed this amended decree. From the decree, the legatee appeals to this court.

The decedent, then a widower with several children, had married Amelia Simeone on April 15, 1931. A few hours prior to the ceremony, the parties entered into a written ante-nuptial contract which provided, "that from and after the solemnization of the marriage aforesaid, the use and ownership and control of all the property real, personal and mixed of the parties hereto, shall continue and remain in each of them respectively, in the same condition and manner and under the same rights in law or equity as if the said Frank Russo and the said Amelia Simeone were sole and unmarried.

"The said Frank Russo, upon his part, hereby relinquishes and disclaims any and all right or rights, claims or interests whatsoever in the separate estate of the said Amelia Simeone, to which he may, in any manner, in law or equity, otherwise, become entitled as husband of the said Amelia Simeone. The said Amelia Simeone, upon her part hereby relinquishes and dis-

claims any and all right of dower and any and all rights, claims, interests or demands whatsoever, either in law or equity in the separate estate or estates of the said Frank Russo, to which she may, in any manner, otherwise, become entitled as wife of the said Frank Russo.

"And, at the death of either of the said parties hereto, the separate estate of Frank Russo and Amelia Simeone, so dying shall descend to and vest in his or her heirs at law, in like manner, as if they had never been married; or in the event that either of the said parties hereto, shall die testate, then, in such event the respective estates of each of the said parties hereto, so dying, shall descend and vest, as he or she by his or her last will and testament, or writing in the nature thereof, shall order and appoint."

In support of her contention, the widow offered, at the hearing before the court on the exceptions, the following evidence: Clay C. C. Stotler, a friend and advisor of Mr. Russo's, who was at the time treasurer of a bank in Pittsburgh, testified that Russo consulted him on the day of the marriage concerning an ante-nuptial agreement. Mr. Stotler called in Joseph A. Rossi, Esq., who later drew the agreement. This witness also testified that Russo spoke to him about the mortgage as follows: "Frank first told me that the mortgage would be satisfied. Then he changed his mind and said no; he said, 'I will have the mortgage assigned to me and if we live together and get along all right, why I will satisfy the mortgage.'"

The principal evidence as to the oral agreement was given by Joseph A. Rossi, Esq., who drew up the written ante-nuptial agreement. He testified that, within a few minutes following the execution of the written agreement, Russo drew $1,500 out of his bank account, and that he said "he was going to pay off or take an assignment of the mortgage subsisting on the property

which was owned by Mrs. Russo, which at that time was not in her name but which, in reality, was her property, and he explained to me the details, that it was to be this consideration on which this ante-nuptial contract was to be predicated. Q. This was after the agreement was signed? A. After the agreement was signed, the first intimation I had of what the consideration really was. Q. Did Mr. Russo ever say anything as to how long the mortgage was to subsist? A. It was to subsist as long as Mrs. Russo would remain to be his wife; he said if she was living with him at the time of his death the mortgage was to be satisfied." Mrs. Russo's married daughter, who was present when the parties interviewed Mr. Stotler, corroborated the fact that Russo had stated that the mortgage was to be satisfied if his wife stayed with him as long as he lived. The wife lived with her husband until his death.

Robert Russo, decedent's son, called by the appellant, testified to a conversation he had with his father, sometime after the marriage, concerning the payment of the personal property tax of $14 on this mortgage. During this conversation his father told him, in the presence of his stepmother, Mrs. Russo, that he and his brother should pay this tax, since he had promised not to collect interest on the mortgage while he lived and as they would get the interest and the principal of this mortgage when he died. This witness was corroborated by his wife. Neither son paid the tax.

The appellant takes the position (first assignment of error) that the testimony offered, showing the oral ante-nuptial agreement, materially changes the written ante-nuptial contract between the decedent and his widow, and that such testimony was inadmissible. The second assignment of error relates to the court's opinion, and the third assignment to the entry of the final decree. The appellant argues that the oral agreement cannot stand, in the face of the written contract covering the

same subject-matter, in the absence of an averment of fraud, accident, or mistake. No such averment was made in this case; nor does the testimony show that the oral agreement was omitted from the written contract by fraud, accident, or mistake.

It is apparent, from the evidence, that the oral agreement relied upon by the widow is separate and distinct from the written contract. The oral testimony did not contradict, alter, or vary the terms of the written contract; and the oral agreement is not repugnant to, nor inconsistent with, the written contract. An independent oral contract, although entered into contemporaneously with a written one, may be sued upon, and the parol evidence rule does not apply. Parcell v. Grosser, 109 Pa. 617, 1 A. 909; Stafford v. Stafford, 27 Pa. 144; Heilman v. Weinman, 139 Pa. 143, 21 A. 29; Taylor v. Sattler, 179 Pa. 451, 36 A. 323. Such an ante-nuptial agreement may be established by parol evidence. 13 R. C. L. page 1026, §46, note 16; Krug's Estate, 196 Pa. 484, 46 A. 484; Gackenbach v. Brouse, 4 W. & S. 546; Lant's Appeal, 95 Pa. 279; Hunt's Appeal, 100 Pa. 590.

The agreement of Russo to satisfy the mortgage on the property of his intended wife, in consideration of marriage, cannot be said to be covered by the written contract. It is distinctly independent thereof and collateral thereto. The written contract provides that "the use and ownership and control of all the property real, personal and mixed of the parties hereto, shall continue and remain in each of them respectively," as if they were unmarried; whereas the evidence as to the oral agreement shows that Russo did not hold the mortgage, covering the property of his intended wife, at the time he executed the written contract. By the written contract each was to retain his own property or separate estate while living, and to be able to dispose of it, regardless of the marriage, at death. By the oral agree-

ment Russo was to purchase and hold the mortgage on the property of his intended wife, which would be satisfied at his death, if, after their marriage, she continued to live with him until that time. This promise on the part of Russo does not invade the security of the written contract; nor is the written contract a direct negation of the oral agreement. See Speier v. Michelson, 303 Pa. 66, 154 A. 127. The establishment of the latter does not require proof that there has been fraud, accident, or mistake in the execution of the former. Prior to the marriage and subsequent to the execution of the written contract, Russo carried out his part of the oral agreement by acquiring the mortgage by assignment. Satisfaction thereof was to be made after his death, providing his wife lived with him until that time. Under the circumstances there was no merger of the oral agreement and the written contract, nor was there any abandonment of the former.

The oral agreement deals with a subject-matter different from that dealt with by the written contract. What Mrs. Simeone was to receive in consideration of her marriage to Russo was not dealt with in the written contract, but only in the oral agreement. The written contract only preserved the status of the parties, as to their respective estates, after marriage, the same as before. The writing plainly was not intended to embody an important element of the negotiations between the parties. See Gianni v. R. Russell & Co., Inc., 281 Pa. 320, 126 A. 791; Wigmore on Evidence (2d Ed.) vol. 5, §2430, par. 3, p. 309. The oral agreement contradicts nothing in the written contract, nor does it reform, modify, or conflict with the latter; but we have in this case two separate and independent contracts which stand side by side and which are equally enforceable. Stafford v. Stafford, supra; Parcell v. Grosser, supra; Heilman v. Weinman, supra; Taylor v. Sattler, supra; White v. Black, 14 Pa. Superior Ct. 459; Bruch

v. Shafer, 45 Pa. Superior Ct. 612. We are of the opinion that the oral agreement is outside of, and in addition to, the written contract, and that the case of Gianni v. R. Russell & Co., Inc., supra, upon which appellant relies, is not controlling.

Although clear and convincing proof of an oral antenuptial agreement is required (Hunt's Appeal, supra; Downing v. Downing, 82 Pa. Superior Ct. 220), the testimony in this case fully met that requirement. The testimony of the witness, Rossi, was corroborated by that of two other witnesses. There is no contradiction of the testimony relative to the oral agreement. The alleged statement by Mr. Russo to his son, made many months after the oral agreement between himself and Mrs. Simeone, could not affect that agreement.

The oral ante-nuptial agreement was established by positive and credible testimony, and we see no reason to disturb the decree of the court below.

The assignments of error are overruled. The decree of the court below is affirmed, at the cost of the appellant.