Musser's Estate.

Argued December 4, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

(1)

**2**

*George T. Hambright* and *John E. Malone,* for appellant.

*R. M. Zimmerman,* City Solicitor, for appellee.

*Charles G. Baker* and *W. Hensel Brown,* for appellee.

*F. Lyman Windolph,* of *Windolph & Mueller,* and *Martin M. Harnish,* for interested party, under Rule 61.

OPINION BY MR. JUSTICE LINN, January 6, 1941:

This appeal is from the construction of a will in a proceeding under the Uniform Declaratory Judgments Act of 1923, P. L. 840, as amended, 12 PS § 831 et seq. The appellants are executors or trustees who, at the outset, are met by a motion to quash on the ground that they are not aggrieved, within the meaning of the appeal statute, by the decree appealed from.

In the residuary clause, testator provided, inter alia, for distribution after a life estate:

"The balance and remainder of my said residuary estate to my hereinafter named executors to purchase land, either in the City of Lancaster, or at some place contiguous thereto, for the purpose of laying out and establishing a public Park to be enjoyed by the citizens of the said City of Lancaster. And after my said executors have purchased, laid out and established such public Park, they are hereby directed to deed or convey the same to the City of Lancaster. Before, however, pur-

chasing land for the purpose of said Park as above set forth, the City of Lancaster must signify its consent by passing an Ordinance to that effect, to accept the gift of said Park as herein provided. Should, however, the said City of Lancaster refuse said gift, then I give and bequeath the balance of my residuary estate in equal shares and parts to the St. Joseph's Hospital of Lancaster, Pa., and the Lancaster General Hospital of Lancaster City, Penn'a."

The life tenant is dead and the time for final distribution has come. There are only three possible beneficiaries, the City of Lancaster and the two hospitals.

The City filed this petition for a declaratory judgment and brought in, as parties respondent, the two executors, the Lancaster General Hospital of Lancaster, and St. Joseph's Hospital of Lancaster, contingent beneficiaries. The executors answered, and denied the right to such a judgment. St. Joseph's Hospital answered that its interest was contingent and, until the City of Lancaster acted finally, the hospital had "no standing as a party in a proceeding for a declaratory judgment [and] submits the entire matter to" the court. The Lancaster General Hospital did not answer, but filed a brief in this Court expressing its agreement with the learned court and approving the decree; it joined in the City's motion to quash the appeal.

Very briefly stated, the petition averred the city desired the purchase of a certain site on which an option was held and on which a park could be established for less than the total balance for distribution. The learned court made the following decree: "And now, July 13, 1940, this Court enters the following decree construing the true intent and meaning of the paragraph relating to the 'balance and remainder of my residuary estate' under Item Eighth of the last will and testament of the late Harry M. Musser to be:

"That the Park contemplated by the testator may consist of one, two or more tracts of land in or about the

City of Lancaster, not necessarily a contiguous tract; and

"That any balance not expended in establishing a fully-completed park, consisting of one, two or more tracts of land as aforesaid, passes under the will in equal shares to The Lancaster General Hospital and the St. Joseph's Hospital of Lancaster, Pa."

The petition averred that the executors had "filed their first and partial account . . . advertised for audit . . . June 17, 1940," showing a balance in excess of $600,000.00 for distribution.

While section 7 of the Declaratory Judgments Act, 12 PS § 837, provides that "All orders, judgments, and decrees under this act may be reviewed as other orders, judgments, and decrees," that section must be read with section 22 (a) of the Orphans' Court Act of 1917, P. L. 363, 20 PS § 2601, limiting the right to appeal to "Any party aggrieved by the definitive sentence or decree of any orphans' court . . ." Appellants must therefore bring themselves within the definition of aggrieved parties. In considering whether they are aggrieved, several facts shown by the record must be kept in mind: all the parties in interest are before the court; the City of Lancaster and both hospitals, contingent beneficiaries, are satisfied with the declaratory judgment rendered; on their behalf no question remains for adjudication; the time fixed for the termination of the trust has arrived; the protection of the trust property is not threatened.

While the merits of the declaratory judgment are not before us, it may be desirable, in disposing of the motion to quash, to state the contentions of the parties. Testator's expressed intention was to supply a park if the City desired it, and, as he made the gifts to the hospitals contingent on the City's rejection of the park, we must understand that his preference was to benefit the City in that way. He did not authorize his executors to say to the City, here is a site on which we propose to

establish a park; take it or leave it. He must be understood to have known and considered that the transaction would involve negotiation with the City because he required municipal action as an attendant fact or circumstance; he contemplated joint consideration by the City and his executors of the elements—inter alia, availability, location, size, expense of maintenance, and its relation to general municipal development, existing and proposed—normally for consideration in such circumstances. His direction that the City must enact a consent ordinance before the executors purchase the land and establish the park, indicates that he intended his executors and the City to join in selecting the site. He assumed that both parties would act, or would be required to act, in good faith in trying to agree to execute his charitable intentions, first, to benefit the City, and, second, the hospitals; while referring to acts in good faith, we add that there is not the slightest suggestion in the case of want of good faith, but the statement of the case would be incomplete if we did not add that the conduct of the parties in carrying out testator's will is subject to the jurisdiction of the Orphans' Court in determining to whom distribution should be made.

Appellants suggest a construction so rigid that it would tend to defeat the gift, the suggestion being, as we understand it, that the residuary estate is given to them to lay out and establish a park and convey it to the City if the City chooses to accept what they offer. We think that is not what the testator meant by what he said. The objection to this literal construction is well stated, in the brief filed under Rule 61 by counsel for the Lancaster Chamber of Commerce, in these words:

"The grammatical sequence of the ideas expressed by the testator is as follows. (1) The executors are to purchase, lay out and establish a park. (2) *After* this has been done, the park is to be conveyed to the City of Lancaster, but (3) *before* the land is purchased the City must adopt an ordinance accepting the park. If this

language is construed in the most literal possible sense, the chronological sequence of the contemplated events must necessarily be (1) the adoption of an ordinance by the City, (2) the purchase, laying out and establishment of a park by the executors and (3) the conveyance of the park to the City. *In other words, the City must adopt an ordinance accepting a park without knowing what park the executors intend to purchase."*

To make distribution, the only remaining duty of the executors was to join with the City in the effort to select and establish a park that would be acceptable to the City and, if they agreed, to convey the park; if the negotiation failed, in circumstances which amounted to a rejection, of which the court would judge after hearing on exceptions, the contingent beneficiaries would take.

If we assume that, by the required negotiation with the City, the executors may be regarded as still having active duties to perform, the facts in the record make such performance an irrelevant consideration in determining whether appellants are aggrieved; these facts are that all interested parties, the City and both contingent beneficiaries, not only find no fault with the declaratory judgment, but approve it.

The question, then, on the motion to quash the appeal, becomes this: Are the trustees aggrieved by a decree construing a trust under which distribution is now to be made in the circumstances stated? The well established rule for determining whether a party is aggrieved, in the sense in which that word is used in the appeal statute, requires us to hold that these appellants are not aggrieved.

It is settled that a trustee cannot prevent the termination of a trust when all interested parties consent, unless there is some special purpose, declared in the trust itself, that requires its continuation, as, for example, spendthrift or separate use provisions: *Bechtel's Estate,* 303 Pa. 107, 154 A. 366. Such termination results in loss by the trustee, who is deprived of compensation he

would have earned if the trust had continued, but that interest 'in fees to be earned is not one which the law protects against the action of the beneficiaries: Restatement, Trusts (1935) § 237, comment a. In such cases, as Judge GEST said in *Wood's Estate*, 261 Pa. 480, 482, 104 A. 673, "It is not sufficient to show that the trust according to its terms is active. There must be something else to support the trust, and this is sufficient to distinguish the cases cited to support the contrary opinion. . . ." See also *Stafford's Estate*, 258 Pa. 595, 102 A. 222.

These cases show that, in the absence of some special trust purpose, neither the trustee's abstract interest in seeing the testator's intent carried out, nor his concrete interest in his fees, can prevent the termination of the trust if all the beneficiaries agree to terminate. To make him an aggrieved party, something else is necessary. The additional element may be the fact that he has been surcharged: cf. *Bartol's Estate*, 182 Pa. 407, 38 A. 527; *Wilbur's Estate*, 334 Pa. 45, 5 A. 2d 325; *Clabby's Estate*, 338 Pa. 305, 12 A. 2d 71. He may appeal from a decree construing the relative rights of beneficiaries if some are unascertained or incompetent to act for themselves: cf. *Neafie's Estate*, 199 Pa. 307, 49 A. 129; *In re Stevens*, 114 App. Div. 607, 99 N. Y. Supp. 1070 (1906). Where a third party successfully claims against the trust estate, the trustee may, and in some situations must, appeal: Restatement, Trusts (1935) § 178, comment a; cf. *Kennedy's Estate*, 328 Pa. 193, 194 A. 901.[1] In those appeals, made on behalf of the fiduciary or of beneficiaries of the fund, the fiduciary

---

[1] It will be noted that this is a duty owed "to the beneficiary." In *Kutz v. Nolan*, 224 Pa. 262, 73 A. 555, a garnishment proceeding by a third party against a trust estate was properly resisted by the trustee who was also the garnishee, in spite of the acquiescence of the life beneficiary, for 'he was "responsible not only to the defendant, but to the other beneficiaries named in the deed of trust." Id. at p. 266.

was a party aggrieved, but, in the absence of surcharge or duty to protect some otherwise unrepresented trust interest requiring protection, the right to appeal has been uniformly denied.

An executor may not challenge distribution to legatees merely because he thinks the court erred in ordering it when, in fact, the distributees do not object: *Hand's Estate,* 288 Pa. 569, 136 A. 864; *Reese's Estate,* 317 Pa. 473, 177 A. 792. A stakeholder, ordered to pay out of funds held by him, is not aggrieved by a distribution which he considers objectionable but which is satisfactory to the distributees: *Craig's Appeal,* 38 Pa. 330; *Crawford v. Shriver,* 139 Pa. 239, 21 A. 518. It was held in *Cameron v. City Bank of York,* 284 Pa. 187, 130 A. 407 (1925), that the Secretary of Banking, in charge of an insolvent bank, was not aggrieved by distribution to creditors and was not entitled to appeal.[2] A receiver was not permitted to complain of distribution to creditors which he thought was erroneous: *Correll, Receiver's Account,* 283 Pa. 277, 281, 129 A. 104. A dry trustee may not appeal from a decree of distribution: *Behringer's Estate,* 265 Pa. 111, 108 A. 414; *Derbyshire's Estate,* 306 Pa. 278, 159 A. 439.

In one of the appeals in *Thomson's Estate,* 92 Pa. 407 (No. 106, p. 409), the rule was applied to an active trust. Testator gave his widow as much of the income as she should need and also made provision for a niece; after other legacies, the trustees were directed to apply the remainder of the income to charities. By a codicil, he authorized his niece "to take out of the income of my estate, all that she requires to render her more than comfortable in her housekeeping during her lifetime. I do not desire to postpone by it the operations of the trusts of my will, except so far as may be necessary to secure the above object." The Orphans' Court awarded

---

[2] This has since been changed by section 1 of the Act of 1937, P. L. 337, 71 PS § 733-11; see *Title Trust & Guarantee Co. Case (No. 3)* 328 Pa. 143, 195 A. 122.

the balance of principal to the trustees to pay to the widow "such sum or sums as she, in her discretion, may require for the maintenance of herself and niece, now Mrs. Charlotte F. Reed, the balance of the income, if any, to be expended in support of the charitable trust declared in the will." This court, after referring to the difficulty of dividing the income between the widow and the niece, if they should differ between themselves, then dealt with the appeal of the trustees from that decree as follows: "Whichever construction prevails, the appellants [the trustees] have no cause of complaint. They have no right to any portion of the income during the lives of Mrs. Thomson and Mrs. Reed, except what may remain after what they have pleased to require. Neither Mrs. Thomson nor Mrs. Reed have appealed from this decree. They are satisfied with the decree below as between themselves. As to them, it has passed *in rem adjudicatam*. Practically, under either construction, they [the widow and niece] are entitled to receive the whole income during their joint lives and the life of the survivor. The appellants have failed to convince us that the charity they represent is at all injured by the decree below. The only party [the widow] who might have been injured has not appealed but acquiesces. As to her, the decree below is conclusive, and the trustees will be fully protected in making their payments according to it." Id. at 420. As to other claimants on obligations alleged to be payable by testator, the trustees were properly regarded as aggrieved because, it was their duty, in the exercise of the standard of care imposed on trustees, to challenge the decree against them by appeal, which, the event showed, they did successfully.

These consequences spring from and find justification in the operation of the general rule [3] that a trustee must exercise such prudence and diligence in conducting the

---

[3] Restatement, Trusts (1935) § 174 et seq; see *Bartol's Estate*, 182 Pa. 407, 410, 38 A. 527; *Clabby's Estate*, 338 Pa. 305, 310, 12 A. 2d 71.

affairs of the trust as men of average diligence and discretion would employ in their own affairs. Where, however, all the beneficiaries are in existence, are sui juris, and acquiesce in a decree construing their respective rights, their acquiescence relieves the trustee from further action on their behalf and prevents his being a party aggrieved.

Cases in other jurisdictions hold that in such circumstances trustees are not aggrieved and may not appeal. In *Bryant v. Thompson,* 128 N. Y. 426, 28 N. E. 522 (1891), it appeared that executors and trustees asked for directions and for judgment as to which of two parties defendants was entitled to a bequest. The judgment was rendered and neither distributee appealed. The court dismissed the appeal of the trustees. The same words "a party aggrieved" came up in the same court in *In re Hart,* 239 N. Y. 511, 147 N. E. 174 (1924), in which it was held that trustees under the will of an incompetent's deceased husband had no legal interest sufficient to sustain the appeal from an order granting an allowance for legal services when those directly concerned had received notice and had not appealed.

In *Reeves's Estate,* 62 S. D. 618, 256 N. W. 113 (1934), in a declaratory judgment proceeding to determine whether the trustee should pay income to a widow or a son of testator, the court made a declaration from which neither widow nor son appealed. The statute allowed appeal "by the party aggrieved." The court said: "The trustee has no interest in the matter save to perform his duty, whatever it may be adjudicated to be. The court has declared that the income should be paid to the widow, in which declaration the son has apparently acquiesced by failing to appeal. Under these circumstances, the trustee does not represent the son in this proceeding. The trustee as such is not aggrieved by the judgment, and, under the circumstances presented by this record, he does not appear to be in this proceeding the representative of any persons not parties to the

proceeding whose rights could be cut off by the judgment."

In *Ratliff v. Patten,* 37 W. Va. 197, 16 S. E. 464 (1892), the trustee of an active trust and a beneficiary appealed from a decree removing the trustee. Later, the beneficiary withdrew her appeal. The appeal of the trustee was thereupon dismissed on the ground that there was nothing "apparent on the face of the proceedings which indicates that [the trustee] suffered any personal or private injury of which he could complain; and the party who was the entire beneficiary, and was entitled to the results of the appeal, if effectual, having dismissed the same on her own motion, we can see no cause for retaining the cause upon the docket . . ."

Appeal quashed.