Gadola Estate.

Argued January 17, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Louis G. Feldmann,* with him *Richard A. Kane,* for appellant.

*Henry A. Giuliani,* with him *Rocco C. Falvello* and *Anthony C. Falvello,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, March 19, 1963:

Filomena Gadola died intestate on October 24, 1959, survived by a daughter, Jennie Serra, her only heir at law. The appellant, Lena Gadola, is the child of the brother of Filomena Gadola's deceased husband. When Lena was three or four years old, she was taken into the home of Filomena and her husband and, except for

two periods of about two years each, resided with Filomena and her husband and Filomena alone, after the death of her uncle, for about forty-five years, or until Filomena's death.

Lena believed herself to be the natural daughter of Filomena and later, the adopted child of decedent. It was not until after Filomena's death that Lena learned that she was neither the natural nor the adopted child of decedent, but was, in fact, the niece of decedent's late husband.

In the normal course of the administration of Filomena Gadola's estate, an account was filed and called for audit. Lena Gadola presented a claim against the estate for the sum of $10,800, for domestic services allegedly rendered by her to the decedent during the years of 1954 to 1959, inclusive, at the rate of $150 per month. She appeared at the audit and offered testimony of an alleged express contract between her and the decedent to compensate her for the services forming the basis of the claim. This testimony was objected to and the objection was sustained on the authority of Sec. 5(e) of the Act of May 23, 1887, P. L. 158, commonly known as the "Dead Man's Act". 28 P.S. §322. No other evidence was offered, and the auditing judge denied the claim. Lena Gadola filed exceptions to the audit and petitioned for a re-hearing of her claim, alleging after discovered evidence. The auditing judge allowed the audit to be reopened in order that Lena might have an opportunity to introduce new evidence in support of her claim.

At the second hearing, appellant offered the testimony of two witnesses in support of her claim. One testified to declarations made by the decedent to him to the effect that Lena did all of the work in the house and that when she, Filomena, died, everything would go to Lena. This witness could not testify with certainty that these statements were made in the presence

of appellant. The second witness testified to statements made to him by decedent, in the presence of appellant, to the same general effect. These statements were made about 25 years prior to decedent's death. In opposition to the claim, the accountant offered the testimony of several witnesses, whose testimony we need not outline for reasons which will become apparent.

Appellant's contention at the second hearing was that an implied contract existed between her and decedent to compensate her for domestic services, and she sought recovery on a quantum meruit basis. The auditing judge found that neither an express nor an implied contract had been established, dismissed the exceptions to the audit and confirmed the audit absolutely; this appeal followed.

We have consistently held that claims against a decedent's estate are viewed with suspicion when they could and ordinarily would, if genuine, and reasonable time permitted, have been made in decedent's lifetime; and that all claims against a decedent's estate must be proved by evidence which is clear, direct, precise and convincing. *Consentino v. Vittoria,* 394 Pa. 538, 147 A. 2d 839 (1959); *Liggins Estate,* 393 Pa. 500, 143 A. 2d 349 (1958); *Cameron Estate,* 388 Pa. 25, 130 A. 2d 173 (1957). We have also held that the existence of a family relationship is an indication that services such as those rendered in the case at bar were not rendered for compensation. *Braden Estate,* 363 Pa. 42, 68 A. 2d 734 (1949); *Peiffer's Estate,* 261 Pa. 209, 104 A. 576 (1918). Likewise, no recovery can be had against the estate of a decedent for services rendered in expectation of a legacy. *Petro v. Secary Estate,* 403 Pa. 540, 170 A. 2d 325 (1961); *Consentino v. Vittoria,* supra; *Braden Estate,* supra.

Reviewing this record with these principles in mind, we conclude, as did the court below, that appellant failed to establish a basis for the allowance of her

claim. The evidence of an express contract to pay falls far short of the standard enunciated in the cases cited above. Furthermore, the relationship between appellant and decedent was such as to rebut any presumption of an implied contract. Appellant, until after decedent's death, thought decedent to be her mother. In such circumstances, we cannot say that she rendered services to decedent in consideration of an implied promise by decedent to compensate her for such services. Surely, decedent, at least, stood in loco parentis to appellant, which standing effectively rebuts the presumption of a promise to pay.

Melancholy as may be the result, we are bound to agree with the court below that "From this record we can only find that there existed a family relationship between the claimant and the decedent tantamount to a mother-daughter relationship, which rebuts the assumption [sic] of an implied promise to pay. Also, from the record, we find that the claimant has not presented sufficient evidence to prove an express contract. . .".

Decree affirmed.

Costs to be borne by the decedent's estate.

Mr. Justice MUSMANNO dissents.