Dart Estate.

Argued March 21, 1967. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Sherman K. Levine,* for appellant.

*Perry L. Reeher,* for appellee.

OPINION BY MR. JUSTICE JONES, July 24, 1967:

This is an appeal from a decree of the Orphans' Court of Lawrence County dismissing exceptions to the first and final Account of the administrator c.t.a. of the estate of Iretta V. Dart (decedent) and disallowing Mary E. Oberleitner's (appellant's) claim in the amount of $1,440 against the estate for services allegedly rendered to decedent.

Iretta V. Dart, a retired school teacher, died on December 27, 1959, aged 88 years. For many years, decedent owned a home in New Castle, Pennsylvania, of which she occupied a first-floor apartment and rented two second-floor apartments. For some time prior to decedent's death, one of the second-floor apartments was occupied by the present appellant. For several years prior to her death, decedent was somewhat physically handicapped due to a hip injury and cataracts.

The basis of appellant's claim is that at irregular periods during the years 1957-1959,[1] she rendered domestic and personal services to the decedent, i.e., she did decedent's laundry, cleaned her apartment, did the cooking and performed other general household chores. As there was no written contract between appellant and decedent, the claim is on a quantum meruit basis.[2]

The lower court dismissed the claim on two grounds: (a) appellant failed to present "clear, precise and con-

---

[1] More specifically, appellant alleges the services were performed as follows: (a) from March 1957 through October 1957—32 weeks; (b) from June 1958 through December 1958—28 weeks and (c) January 1959 through October 1959—36 weeks or a total of 96 weeks.

[2] It is apparently conceded by the parties that, assuming the services were, in fact, rendered, the reasonable value of appellant's services was $1 an hour.

vincing" evidence to establish her claim and (b) appellant failed to present evidence sufficient to rebut the presumption of periodic payment for the services. The present appeal challenges such conclusions.

Before turning to an analysis of the evidence presented by appellant in support of her claim, certain guidelines and criteria delineated by our case law with respect to claims of this nature must be set forth: (1) "Claims of this nature against dead men's estates, resting entirely in parol, based largely upon loose declarations, presented generally years after the services in question were rendered, and when the lips of the party principally interested are closed in death, require the closest and most careful scrutiny to prevent injustice being done." *Walls' Appeal,* 111 Pa. 460, 471, 5 A. 220 (1886). See also: *Mooney's Estate,* 328 Pa. 273, 274, 194 A. 893 (1937); (2) all claims against the estate of a decedent must be proven by evidence which is clear, precise and convincing: *Petrov v. Secary Estate,* 403 Pa. 540, 542, 170 A. 2d 325 (1961); *Liggins Estate,* 393 Pa. 500, 505, 143 A. 2d 349 (1958); *Stafford v. Reed,* 363 Pa. 405, 70 A. 2d 345 (1950); (3) appellant, proceeding on a quantum meruit theory, has the burden of proving (a) the performance of services, (b) the decedent's acceptance of them, and (c) their value: *Lach v. Fleth,* 361 Pa. 340, 348, 64 A. 2d 821 (1949); (4) appellant must overcome a presumption that any services rendered were paid for from time to time while they continued, a presumption which will gather strength with each succeeding year and the evidence to overthrow it must, of course, be correspondingly increased. See: *Sanders Estate,* 370 Pa. 208, 210, 87 A. 2d 923 (1952); *Braden Estate,* 363 Pa. 42, 46, 68 A. 2d 734 (1949); and finally, (5) ". . . the finding of the auditing judge who saw and heard the witnesses is conclusive where there is evidence to support it, and it is not based on a capricious disbelief of the witnesses": *Mooney's Estate,* supra, at 275.

With these principles in mind, we turn to an examination of the testimony presented in support of the appellant's claim. Appellant's principal witness was Raymond Jacobs, a neighbor who had lived next door to decedent from 1955 to 1959. Jacobs was home a great deal since he was caring for an ailing mother and, thus not regularly employed. Some time in 1957 or 1958,[3] Jacobs was asked by appellant to assist her in doing household chores for decedent and through such assistance to appellant, he was able to testify as to the chores she performed. However, on cross-examination, it became apparent that the witness was unable to recall when these chores were performed or with what regularity and, when asked when he began assisting appellant, he replied: "A. That was in '57 or '58. Q. Do you remember when in '57 or '58? A. I can't recall the month, no sir." (R-8). Likewise, Jacobs was unable to tell how often he saw appellant performing the alleged services: *"Maybe once a week—and maybe nothing. Then it was maybe twice a week—and it all depended on when she needed help."* (Emphasis supplied).

Jacobs also testified that he overheard decedent tell appellant "Mary, don't worry about a thing. You will, be taken care of in the will." but he was unable to recall any details concerning this discussion or even recall generally when it occurred.

Such testimony is illustrative of the vagueness and uncertainty which characterized Jacob's testimony. While he stated appellant worked three to four hours every day for decedent, he countered by stating that during some weeks he was not at decedent's home at all. The record reveals clearly that Jacobs was testifying not from personal knowledge and experience but rather from what he had heard from appellant and others.

---

[3] The witness could not be more specific.

Before passing to the testimony of the other witnesses, one facet of Jacobs' testimony should be noted. Jacobs testified that he performed chores, which, in many respects, were identical to those allegedly performed by appellant and that every time he did work for decedent *she paid him immediately for his services.*

Kathryn Bailey testified that she rented one of decedent's apartments during the winter of 1957 and that appellant performed various tasks and chores for decedent almost every day. However, on cross-examination, it developed that the witness lived on the premises only a few months, that she was in decedent's apartment on *only two occasions* and that she *never actually saw appellant do any of the work allegedly performed.* On the contrary, the witness "knew" appellant did decedent's washing and ironing only because appellant—not decedent—told her it was decedent's washing and ironing: "Q. And did you ever see Mrs. Oberleitner performing any services, or duties in Mrs. Dart's apartment? A. Not in her actual apartment, but I know she was working there—and I know she did her washing and ironing, because she did that in her apartment. Q. Well you never saw her work in Miss Dart's apartment? A. No, not in Miss Dart's apartment—while she was working. Q. But you saw her doing some washing and ironing in her own apartment? A. For Miss Dart, yes. Q. Did Miss Dart— A. We talked about it. That's how I know. Q. Who talked about it? A. Mary and I. Q. Mrs. Oberleitner then told you that it was Miss Dart's washing and ironing? A. Yes. Q. Did Miss Dart ever tell you that? A. No, I never talked too much with Miss Dart—because I had a sick spell of my own there. Q. As a matter of fact, you never talked with Miss Dart at all about Mrs. Oberleitner, with the exception of this occasion when you say that she told you to contact Mary? A. Yes. Then she told me that she didn't know how

she would get along without Mary. Now that is the words that she said—'I don't know how I would get along without Mary.' Q. But other than that occasion, you never talked with Miss Dart about Mrs. Oberleitner? A. No, I never talked very much with Miss Dart. Q. You were never in the apartment, and you never saw Mrs. Oberleitner in the apartment? A. I don't think I did. I don't know." (R-22).

Pearl Thompson, a neighbor of decedent during the years in question, could testify only to one isolated instance,—which consumed twenty to twenty-five minutes—, during which she assisted appellant in moving decedent into a chair. She was unable to recall any other instance when appellant performed the services alleged. However, in one particular, Miss Thompson's testimony was enlightening. In reciting the details of the above episode, she stated that decedent had told her that *she* (decedent) *was, in fact, paying appellant*: "Miss Dart told me that Mary was a wonderful help to her, and she couldn't get along without her—and she said '*I don't pay her too much*. At this time, I am not financially able to—but I have told her that she will be given what she deserves when I get straightened around.'" (Emphasis supplied) (R-29).

Finally, a fourth witness testified to certain services performed by appellant but she could not remember with any degree of definiteness the approximate times when such services were rendered. Commenting on this testimony, the lower court stated: "The record is left only with a showing that this [the performance of services] occurred some time between 1954 and 1957."[4]

Our examination of this record leads to the conclusion that the evidence presented is insufficient qualitatively to sustain appellant's claim. The testimony is

---

[4] Opinion of the lower court.

either of an isolated event or vague and uncertain as to when the alleged services were performed and the regularity thereof and a great deal of the testimony is based on information gathered by the witnesses from sources other than their own experience and knowledge. It is impossible to sustain the present claim on the state of the record. We agree with the lower court that the testimony is most indefinite and unsatisfactory and that appellant has not established the performance of services by evidence which is clear, precise and convincing.

Equally fatal to appellant's claim is her failure to rebut the presumption of periodic payment. In *Cummiskey's Estate,* 224 Pa. 509, 512, 73 A. 916 (1909), we said: "It is a well-established rule that the wages for domestic service are presumed to be paid at stated periods, and that when a claim for such service is presented against a decedent's estate, extending over any great length of time, the burden is upon the claimant to rebut the presumption. It, of course, is a presumption of fact which may be rebutted by competent evidence, but until satisfactory evidence is produced the presumption prevails and the claim must be disallowed." Parenthetically, we note that the present case does not involve a promise, either express or implied, for payment at a set time in the future which would render the presumption inapplicable. Cf. *McWilliams Estate,* 162 Pa. Superior Ct. 299, 56 A. 2d 241 (1948); *Bemis v. Van Pelt,* 139 Pa. Superior Ct. 282, 11 A. 2d 499 (1940). Appellant's own witness, Pearl Thompson, testified that decedent had told her that she (decedent) was paying appellant. Moreover, the loose declarations of decedent alleged to have been made do not constitute a promise for future payment and the evidence as to such future compensation is not only vague and inconsistent but also reflects that only on one isolated occasion was such a declaration made in front

of appellant. We, therefore, find that there was no agreement or promise for future payment and that the presumption of periodic payment remains applicable to appellant's claim.

Appellant seeks to rebut the presumption on several grounds. First, she points to the testimony of the administrator who said he could not recall finding any of decedent's checks which were payable to appellant. Appellant's position is that the lack of cancelled checks proves nonpayment. We do not agree. Such a position assumes without record proof that decedent paid all her bills by check and not only is there no such proof but the record reflects that decedent received rental income from her apartments and had sufficient means available to make periodic payments for services rendered to her. We are unable to subscribe to appellant's assumption without more concrete evidence which appellant has failed to produce.

Secondly, appellant contends that the presumption is inapplicable since the administrator is withholding information. This charge is wholly unwarranted and without record support. The administrator testified that he no longer had decedent's cancelled checks, that he did not know where they were and that decedent's checks were turned over to estate counsel who has since died. There is no evidence of a refusal to produce any records presently available. Indeed, the record is devoid of any request or demand by the appellant on the administrator to produce the records. With respect to this charge, it should be noted that appellant did not present her claim until almost three and a half years after decedent's death; by so delaying she ran the risk of having evidence lost or clouded by the passage of time.

Appellant has failed to rebut the presumption of periodic payments; on the contrary, the testimony of *her* witness—Pearl Thompson—buttresses it, i.e., "I

[decedent] do not pay her too much". Furthermore, her principal witness—Raymond Jacobs—testified that he performed services for decedent similar to those allegedly performed by appellant and that, on each occasion, *decedent paid him*. Such testimony supports, rather than refutes, the presumption of payment.

Finally, it should be noted that loose declarations of a decedent do not overcome the presumption nor do they establish a contract by the decedent to pay for services by a testamentary legacy; *Cummiskey's Estate,* supra; *Monson Estate,* 160 Pa. Superior Ct. 631, 635, 53 A. 2d 909 (1947). The testimony as to such declarations is inconsistent and vague.[5] Equally important is the fact that, on only one occasion, were such declarations made in the presence of appellant.

In conclusion, we agree with the lower court that appellant's testimony is too vague, uncertain and inconsistent to support her claim and to rebut the presumption of periodic payment. That which we said in *Braden Estate,* supra, is most apposite: "If they rendered valuable services to the decedent for which they should have been compensated and were not, it is unfortunate, but courts cannot sustain such claims on evidence of such little probative value as the evidence offered by these claimants. Individuals who render personal services to their relatives or friends who reside with them and expect to be paid therefor, and who receive nothing for such services during the lifetime of the person served, should prudently obtain from such person an agreement in writing for their compensation after that person's decease. There was no such written agreement here and the parol evidence claimants offered in their attempt to support their

---

[5] Compare testimony of Carol Ulman with that of Pearl Thompson.

claim is utterly inadequate. If claims against decedent's estates should be allowed on such testimony, no decedent's estate would be safe from spoliation." (p. 47)

Decree affirmed. Costs on the estate.

Mr. Justice ROBERTS concurs in the result.