## Moore Estate.

Argued April 28, 1970.   Before Bell, C. J., Jones, Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

*Richard L. Raymond,* with him *Schroeder, Jenkins and Raymond,* for appellant.

*John Lamon, Jr.,* with him *Joseph D. Calhoun,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, July 2, 1970:

William and Edith Moore were married on January 22, 1966. This was the second marriage for both, and both had offspring by their former marriages; Mrs. Moore was a grandmother.

Edith Moore died testate on January 4, 1968, exactly thirty-one days after she executed her last will. She bequeathed her residuary estate in equal shares to her daughter, Patricia Graff, to her grandson, Eric Graff, and to her granddaughter, Valerie Graff. Patricia Graff was named executrix of her mother's estate. On September 27, 1968, the executrix filed an inventory which valued the assets of the estate at approximately $45,000. Included in the inventory was a Dreyfus Fund certificate having a value of approximately $4,-600.

William Moore, the surviving spouse, filed (1) a timely election to take against his wife's will and also to take against any inter vivos transfers which he had a right to treat as testamentary, and (2) a timely petition claiming the family exemption. Patricia Graff, in her own right and as trustee for her minor children, filed (1) a petition to vacate William Moore's election to take against (a) decedent's will and (b) her inter vivos transfers, and (2) exceptions to William Moore's petition for the family exemption. Both the petition and the exceptions were based upon the allegation that William Moore, for good and valuable consideration, had agreed not to take any share of his wife's estate, and that her will recited this agreement.

It has long been the law of this Commonwealth that "an oral ante-nuptial agreement should not be found, save upon *clear and convincing proof.*"* *Hunt's Appeal,* 100 Pa. 590, 597; see, *Krug's Estate,* 196 Pa. 484, 46 Atl. 484; *Lant's Appeal,* 95 Pa. 279; cf. also, *Slavinski Estate,* 420 Pa. 504, 218 A. 2d 125; *Brozenic Estate,* 416 Pa. 204, 204 A. 2d 918; *Bunn Estate,* 413 Pa. 467, 198 A. 2d 518; *Fenstermaker Estate,* 413 Pa. 645, 198 A. 2d 857.

The lower Court was of the opinion that Patricia Graff did not present adequate evidence to sustain her burden of proof. We agree.

Mrs. Graff presented four witnesses to support her claims of an antenuptial agreement in and by which Moore released all his rights in his wife's estate. Two of the witnesses were disinterested; the other two, namely, Mrs. Graff and her husband, were manifestly interested in the issues and their outcome.

William Moore contended that Mr. and Mrs. Graff were incompetent to testify because of the "Dead Man's Statute," Act of May 23, 1887, P. L. 158, §5(e), 28 P.S. §322. "The burden to prove incompetency rests upon [William Moore], competency to testify being the rule and incompetency the exception: (Rosche v. McCoy, 397 Pa. 615, 619, 620, 156 A. 2d 307 (1959) and authorities therein cited; Hendrickson Estate, 388 Pa. 39, 44, 130 A. 2d 143 (1957)). The so-called 'Dead Man's Act', supra, provides, inter alia, an *exception* to the general rule of competency and *'disqualifies* as a witness a "surviving" or "remaining" party or "other person" *whose interest is adverse* to one who is dead and proscribes any testimony by such party or person against the deceased as to matters which occurred before death if the deceased had any right in the subject matter which has passed to a party of record.' (Hen-

---

* Italics throughout, ours, unless otherwise noted.

drickson Estate, supra, p. 45). In Hendrickson, we further said that 'three conditions must exist before any such witness is disqualified: (1) the deceased must have had an actual right or interest in the matter at issue, . . .; (2) the interest of the witness—not simply the testimony—must be adverse;* (3) a right of the deceased must have passed to a party of record who represents the deceased's interest' (p. 45)." *Matthews Estate,* 431 Pa. 616, 624-625, 246 A. 2d 412. See also, *Pavlinko Estate,* 399 Pa. 536, 160 A. 2d 554; *Hendrickson Estate,* 388 Pa., supra.

Since Patricia Graff is a beneficiary under decedent's will and represents the interests of other beneficiaries under the will, she represents the decedent's interest and her interest is not adverse to the decedent's interest. Therefore, neither she nor her husband was rendered incompetent to testify by the "Dead Man's Statute."** On the contrary, it was the surviving spouse, William Moore, claiming against the will, whose interest was adverse to that of the decedent. Accordingly, William Moore would have been incompetent to testify had he sought to establish any interest adverse to that of the decedent.

However, when Patricia Graff called witnesses who testified adversely to William Moore's interests about transactions which occurred in the presence of William Moore (and a witness), William Moore was rendered competent to testify in contradiction or rebuttal of these witnesses. Act of June 18, 1891, P. L. 287, §1, 28 P.S. §325. *Hillegass Estate,* 431 Pa. 144, 152, 244

---

* Footnote omitted.

** If Patricia Graff was incompetent to testify because of the "Dead Man's Statute," her husband would also be incompetent to testify under the Statute, because, under Pennsylvania law, if a wife is incompetent to testify her husband is equally incompetent, and vice versa. See, *Weaver, Exr. v. Welsh,* 325 Pa. 571, 191 Atl. 3; *Bitner v. Boone,* 128 Pa. 567, 18 Atl. 404.

A. 2d 672; *Gelb Estate,* 425 Pa. 117, 228 A. 2d 367; *Com. Trust Co., Admr. v. Szabo,* 391 Pa. 272, 138 A. 2d 85.

The real issue on this appeal is whether Patricia Graff has met her burden of proving the existence of an oral antenuptial agreement between her mother and stepfather by clear, direct, precise and convincing evidence. Whether this burden has been met is a question of law. In *Nicolazzo Estate,* 414 Pa. 186, 199 A. 2d 455, the Court said (pages 188-189):

"Claims against a decedent's estate can be established only by evidence which is clear, direct, precise and convincing: Secary Estate, 407 Pa. 162, 164, 180 A. 2d 572, 573 (1962); Gadola Estate, 410 Pa. 250, 252, 188 A. 2d 744, 746 (1963); Cameron Estate, 388 Pa. 25, 29, 130 A. 2d 173, 175 (1957). . . .

"Appellate courts usually accept the evidentiary supported findings of an auditor or chancellor but, when the issue is whether the evidence presented was clear, direct, precise and convincing, a question of law is presented and such issue is clearly for determination by appellate courts. The appellate courts need not accept as true an auditor's conclusion as to whether the required norm or standard of proof has been met: Stafford v. Reed, 363 Pa. 405, 70 A. 2d 345 (1950); Aliquippa National Bank v. Harvey, 340 Pa. 223, 231, 232, 16 A. 2d 409, 414 (1940); Miller's Estate, 279 Pa. 30, 38, 123 A. 646, 649 (1924)."

The testimony in the lower Court lacked any clear and convincing evidence to prove an antenuptial agreement between William and Edith Moore concerning their respective rights in each other's estate. William Moore on numerous occasions, both before and after his marriage to the testatrix, told several persons that he married her because he loved her and not because he had any interest in her property and money. These statements are not sufficiently definite and certainly

not legally sufficient to prove an antenuptial agreement in and under which William Moore waived all of his rights in his wife's estate.

Patricia next relies upon the third article of testatrix's will to prove her claim. Article THIRD provided: "Even though my husband, WILLIAM A. MOORE, SR. has *considerately stated* that he does not want any share of my estate, I give him my shares in Dreyfus Fund, Inc."* This was the only reference in the will to any alleged agreement between the testatrix and her husband concerning their respective rights in each other's estate.

Testatrix's aforesaid declaration in Article THIRD of her will does not aid Patricia Graff; it implies, if anything, that there was no agreement between the parties as to an absolute relinquishment by Moore of all his rights in and to his wife's estate.

Without any doubt, Patricia Graff has failed to establish an oral antenuptial agreement between her mother and stepfather by clear and convincing evidence.

Decree affirmed; each party to pay own costs.

---

* This was the only provision made by the testatrix for her husband.