331 A.2d 174

Rose A. DiFLORIDO

v.

Noe A. DiFLORIDO, Appellant (two cases).

Supreme Court of Pennsylvania.

Argued Nov. 15, 1974.

Decided Jan. 27, 1975.

642

Peter J. Verderame, Langhorne, for appellant.

Alfred Francis Shea, Cornwells Heights, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

JONES, Chief Justice.

The parties in this case, appellee, Rose A. DiFlorido, and appellant, Noe A. DiFlorido, were married on September 17, 1960. Thereafter, Mr. and Mrs. DiFlorido resided together as husband and wife until their separation on October 15, 1970. Subsequently, on June 18, 1971, the DiFloridos were divorced.

The matters now before this Court consist of two actions, one in replevin without bond and one in equity,[1]

---

1. The parties stipulated that the two actions be tried together and that a jury trial be waived with reference to the replevin action. Following the hearing, exceptions were taken to the trial judge's decree. Subsequently, the court en banc dismissed these exceptions and both actions were appealed: the replevin action to the Superior Court pursuant to Section 302 of the Appellate Court Jurisdiction Act of 1970, 17 P.S. § 211.302 (Supp.1974), and the equity action to this Court pursuant to Section 202(4) of the Appellate Court Jurisdiction Act of 1970, 17 P.S. § 211.202(4) (Supp. 1974). Since the Superior Court granted a motion to certify the replevin action to this Court, we now consider both actions together. See Section 503(c), 17 P.S. § 211.503(c).

both arising from the appellee's claim to certain personal property, clothing, jewelry and household furniture and effects which the appellee, or the appellant and the appellee, had accumulated immediately prior to and during their marriage and which, since their divorce, have allegedly remained in the appellant's possession at the former marital residence.

After the hearing below, the trial judge awarded Mrs. DiFlorido certain items, consisting of gifts given to, and purchases funded and used exclusively by the appellee, certain property inherited from the appellee's deceased mother's estate, and the property or the money value of those items referred to as "the Italian jewelry." The trial judge also directed the appellant to pay over to the appellee one-half of the appraised value of certain property consisting of household goods and furnishings.[2]

The appellant now contends that the preceding dispositions were improper for the following reasons: (1) since part of the property awarded to the appellee belonged to the estate of the appellee's deceased mother, the estate should have been joined as an indispensable party. (Pa. Rules of Civil Procedure 1032, 12 P.S. Appendix);[3] (2) although the appellee's ownership of "the Italian jewel-

---

**2.** The items in this appeal are too numerous to enumerate. The trial court, for purposes of distribution annexed to its opinion six schedules: all items belonging solely to Mrs. DiFlorido (except for the Italian jewelry) were listed in schedules one and three. The Italian jewelry was listed in schedule two, and property that had been jointly owned by both parties was listed in schedules four and five. Items belonging solely to Mr. DiFlorido, or other third persons, were listed in schedule six. Since the lower court determined that Mrs. DiFlorido had failed to meet her burden of proving that items in schedules three and five were in appellant's possession, and since Mrs. DiFlorido was found to have no proprietary interest in the items listed in schedule six, this appeal only concerns the distribution of those items listed in schedules one, two and four.

**3.** Consequently, appellant contends that the lower court lacked jurisdiction. See § 711(1) Probate, Estate and Fiduciaries Code, 20 Pa. S. § 711(1) vesting exclusive jurisdiction over the administration and distribution of personal property in decedent's estates in the Orphans' Court Division of the Common Pleas Court.

ry" was uncontested, there was insufficient evidence to demonstrate that appellant remained in possession of said jewelry; (3) there was insufficient evidence to find that appellee owned all other items that were found to belong to her exclusively and (4) since the appellant was the sole provider during the marriage and since household goods found in the joint possession of husband and wife *presumptively* belong to the husband, the appellee should have been found to have no interest in those household goods which the lower court determined to be held by both parties as tenants in common. For the reasons hereinafter set forth, we find these arguments without merit and therefore affirm the order and decree of the lower court.

Taking appellant's contentions in order, we first note that, since the property in the appellee's deceased mother's estate properly passed to the appellee pursuant to distribution under §§ 3531–3534 of the Probate, Estate and Fiduciaries Code, 20 Pa. S. §§ 3531–3534, the decedent's estate was not a party in interest. Although Mr. DiFlorido contends he has a lien or claim against the distributed property, the record reveals that he did not make his claim known within the time prescribed under Section 3532 of the Probate, Estate and Fiduciaries Code (20 Pa. S. § 3532).[4] furthermore, such claim, even if timely, clearly lacked the definiteness and certainty required in this jurisdiction. *See, e. g., Dart Estate,* 426 Pa. 296, 297–298, 232 A.2d 724, 725 (1967); *Petro v. Secary Estate,* 403 Pa. 540, 542, 170 A.2d 325, 327 (1961); *Liggins Estate,* 393 Pa. 500, 505, 143 A.2d 349, 352 (1958) and *Stafford v. Reed,* 363 Pa. 405, 70 A. 2d 345 (1950). The hearing judge properly found that

4. Under Section 3532, a claimant has one year from completion of the advertisement of the grant of letters to give notice of his claim. In this case, Mrs. DiFlorido, the personal representative of the decedent's estate, completed the required advertisement on May 23, 1970 and was not notified of her former husband's claim until some time in August of 1971.

Mr. DiFlorido's basis for such claim, namely that his deceased mother-in-law had agreed to name him as a beneficiary in her will, lacked sufficient probative value, as not only was the claim less than, "clear, precise and convincing" (*Dart Estate, supra*, 426 Pa. at 297–298, 232 A.2d at 725), the appellant's own testimony regarding such claim was inconsistent.[5]

■ Appellant's second and third contentions are equally without merit. Our review of the record reveals there was sufficient evidence to support the court's finding that appellant took and still retains the articles referred to as "the Italian jewelry," and that the various items found to belong solely to appellee were in fact her own. Since the trial court's findings are supported by the evidence and are not premised on erroneous inferences and deductions or error of law, we will not disturb them. (*Accord, Cohen v. Sabin*, 452 Pa. 447, 451, 307 A.2d 845, 848 (1973) ; *Schulman et al. v. Serrill*, 432 Pa. 206, 210, 246 A.2d 643, 645–646 (1968), and *Bokoch v. Noon*, 420 Pa. 80, 215 A.2d 899, 901 (1966).

■ The appellant's last contention, relating to the ownership of certain property consisting of household goods and furnishings [6] is more troublesome. These contested items, except for an early American bedroom set purchased with appellee's savings, were primarily funded with appellant's earnings. Nevertheless, both spouses se-

5. The testimony offered appears to deal at first with a claim against the aforesaid estate and then shifts to a claim against the appellee resulting from an alleged promise by appellee to pay appellant the sum of $2,000. It is unclear from the record whether it is this promise or the alleged agreement with the deceased that is the basis for appellant's claim for the board due by appellee's mother.

6. The household goods and furnishings which were involved in the instant case consisted *inter alia* of furniture, appliances, carpeting and kitchen utensils. For an explanation of the various items that are included in the term "household goods and furnishings" see generally household goods, 19A Words and Phrases, pages 510–514.

lected the various items together, intended that the items be mutually used, and in fact, shared in such items' use and possession. Based on the foregoing the trial court found that both parties intended to donate the household goods and furnishings to the "marital unit" and concluded that upon the grant of the divorce the house items belonged to both parties as tenants in common.[7]

In order to ascertain the ownership of these household items, the lower court traced the source of funds used in purchasing the contested property and then, *presuming* the *purchaser* to be the owner, placed the burden on the other party to show that a gift to the marital unit had been made. Appellant now contends that this approach was *improper* and that had the lower court applied the long prevailing common law doctrine that "ownership of household goods used and possessed by both spouses is in the husband" a different result would have been reached. Although this contention may well be true,[8] since we now find the common law presumption to be without any reasonable basis in fact, we need not apply it to the evidence presented below.

◼ Initially, we note that the common law presumption of "husband's ownership" was inspired by the marriage entity concept existing prior to the adoption of the Married Women's Property Acts of May 23, 1887, P.L.

7. A conveyance to the marital unit, *without more*, vests title in both spouses as tenants by the entireties (*Brenner v. Sukenik*, 410 Pa. 324, 330, 189 A.2d 246, 249) (1963). Under the Act of May 17, 1949, P.L. 1394, 68 P.S. § 501, after divorce, the former spouses become tenants in common of equal one-half shares of the property acquired after 1949 which was owned by them as tenants by the entireties.

8. In light of the decisions in: *Mulligan Estate*, 426 Pa. 374, 232 A.2d 758 (1967); *King Estate*, 387 Pa. 119, 126 A.2d 463 (1956); *Schwartz Estate*, 166 Pa.Super. 459, 71 A.2d 831 (1950); *Matheny Estate*, 164 Pa.Super. 18, 63 A.2d 477 (1949), and *Chadwick Estate*, 154 Pa.Super. 157, 35 A.2d 582 (1943), it is questionable whether the quality and quantity of Mrs. DiFlorido's testimony should have been sufficient to rebut an initial finding of ownership in Mr. DiFlorido.

170 and June 8, 1893, P.L. 344, Sec. 1 (48 P.S. § 31).[9] Although the passage of the Married Women's Property Acts, culminating in the act of July 15, 1957, P.L. 969, No. 417, § 1, 48 P.S. § 32.1, has done away with this concept and has enabled wives to enjoy both real and personal property ownership, most jurisdictions still cling to the earlier presumptions regarding household property ownership.[10] Nevertheless, the latest reasons given in this jurisdiction for retaining the common law presumption, namely, that the Married Women's Property Acts did not *expressly* provide for a change with respect to the common law presumption and that the husband still has a duty to provide his wife with a home ("which, of course, means household goods and not merely roofs and walls")[11] were criticized by this Court in *Fine v. Fine*, 366 Pa. 227, 77 A.2d 436 (1953). *See also, Cinardo v. Cinardo*, 2 D. & C. 219 (C.D.Phila.1954) and *Esposito v. Esposito*, 22 Bucks Co.L.Rep. 106 (1972).[12]

In *Fine* we found that, in light of the "emancipation of married women over their property" and changing social conditions, the validity of our doctrine was no

9. The marriage entity concept refers to the belief that "[b]y marriage the husband and wife are one person in law." 1 W. Blackstone Commentaries * 442. Since the husband was considered the lord and master of his wife, all personalty acquired by her during marriage belonged to her husband, while that acquired by the husband was solely his. See 102 U. of Pa. 258 (1954) citing 2 F. Pollock and F. Maitland, The History of English Law, 405, 427 (2d ed. 1898) and *Du Pont v. Du Pont,* 33 Del.Ch. 571, 574, 98 A.2d 493, 494 (1953).

10. See 41 C.J.S. Husband & Wife § 18 p. 156 (1974) Supp. for the list of states following the common law presumption. Contra *Vaughan v. Borland,* 234 Ala. 414, 175 So. 367, 111 A.L.R. 1370 (1937) and *Du Pont v. Du Pont,* 33 Del.Ch. 571, 98 A.2d 493 (1953).

11. *Schwartz Estate,* 166 Pa.Super. 459, 462, 71 A.2d 831, 833 (1950).

12. Cf. *Henderson v. Henderson,* Pa., 327 A.2d 60 (1974) where we held the right of support no longer depends on the sex of the spouse, but rather depends on the relative financial circumstances of the parties.

longer certain. Mr. Justice Stearne speaking for this Court noted that "in modern times, when married women are so universally engaged in professions, business and trades, it is unrealistic to *presume* that it was with the husband's funds *alone* the furniture and furnishings in their joint possession were purchased and that the husband is their *sole* owner." Although a different viewpoint was expressed in later cases,[13] we hold now that our analysis in *Fine* was correct and in accordance with more recent cases following the Pa. Equal Rights Amendment, Pa.Const. Art. I, § 27, P.S.

■ Turning, for the moment, to the lower court's approach of determining the *actual* purchaser, we note that such approach eliminates the injustice of initially presuming that the husband purchased *all* property intimately associated with the marriage. Nevertheless, we can not accept an approach that would base ownership of household items on proof of funding alone, since to do so would necessitate an itemized accounting whenever a dispute over household goods arose [14] and would fail to acknowledge the *equally important* and often substantial nonmonetary contributions made by either spouse.[15]

■ With the passage of the Equal Rights Amendment, this Court has striven to insure the equality of rights under the law and to eliminate sex as a basis for distinction. Since "the law will not impose different

13. Appellant cited both *Mulligan Estate*, 426 Pa. 374, 232 A.2d 758 (1967) and *King Estate*, 387 Pa. 119, 126 A.2d 463 (1953) as cases since *Fine* which adhere to the common law doctrine. Nevertheless, since we applied the common law presumption in *Mulligan* and *King* without examining its basis and since we decided those appeals prior to the adoption of the Pa. Equal Rights Amendment, Pa.Constr. Art. I, § 27, (Adopted May 18, 1971) *it is* doubtful whether their holding any longer has vitality.

14. We are cognizant that regardless of who actually purchases a household item during or in anticipation of marriage, such purchases are generally made without specifying *whose* funds are used and/or *who* holds title.

15. *See Du Pont v. Du Pont,* 33 Del.Ch. 571, 576, 98 A.2d 493, 496.

benefits or different burdens upon the members of a society based on the fact that they may be man or woman" *Henderson v. Henderson*, Pa., 327 A.2d 60 (1974) we unhesitatingly discard the one-sided presumption confronted today. Accord, *Hopkins v. Blanco*, 457 Pa. 90, 320 A.2d 139 (1974) and *Conway v. Dana*, 456 Pa. 536, 318 A.2d 324 (1974). Furthermore, having found that the husband is no longer necessarily the "sole provider" and noting that even where he is, it is likely that both spouses have contributed in some way to the acquisition and/or upkeep of, and that both spouses intend to benefit by the use of, the goods and furnishings in the household, we will not burden either party with proving that such household items were donated to the marital unit.

We conclude, therefore, that for the purpose of determining title of household goods and furnishings between husband and wife, the property that has been acquired in anticipation of or during marriage, and which has been possessed and used by both spouses, will, in the absence of evidence showing otherwise, be presumed to be held jointly by the entireties. Since in this case, there was no proof of title to overcome such presumption, and since, in any event, the only evidence adduced at trial comported with a finding of joint ownership, we will not disturb the lower court's findings.

Order and decree affirmed. Appellant to pay costs.