346 A.2d 774

In re ESTATE of Jacob L. HAIN.

Appeal of Mary McQuay HAIN and American Bank and Trust Company of Pennsylvania, Executors and Trustees under the Will of Decedent.

Supreme Court of Pennsylvania.

Argued April 10, 1975.

Decided Oct. 30, 1975.

Gene M. Venzke, Carl F. Mogel, Balmer, Moegel, Speidel & Roland, Reading, H. Ober Hess, Ballard, Spahr, Andrews & Ingersoll, Edmund L. Harvey, Jr., Philadelphia, for appellants.

David M. Kozloff, Rhoda, Stoudt & Bradley, Reading, for appellee, YMCA of Reading & Berks Co.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellee the Young Men's Christian Association of Reading and Berks County filed a claim against the estate of decedent Jacob L. Hain for the unpaid balance of a pledge made by decedent to appellee's swimming pool construction fund. The Orphans' Court Division of the Court of Common Pleas of Berks County determined that decedent had contracted to contribute $100,000, and the

court awarded appellee the unpaid balance of $94,399.38.[1]
This appeal ensued.[2] Two issues are presented for our
determination: (1) whether appellants lack standing to
bring this appeal; and (2) whether the orphans' court
erred in honoring appellee's claim against the estate.
We conclude that appellants do have standing, and af-
firm.

Appellee asserts that appellants, as executors, lack
standing to challenge the decree of the orphans' court.[3]
Appellant Mary McQuay Hain, decedent's widow, elected
to take against the will, and she and appellant American
Bank and Trust Company of Pennsylvania are both exec-
utors and residuary trustees under the will. However,
the exceptions to the May 16, 1974, decree of the or-
phans' court were filed by appellants only in their capac-
ity as executors.

The right to appeal a decree of the orphans'
court is conferred by section 792 of the Decedents, Es-
tates and Fiduciaries Code, 20 Pa.C.S. § 792 (Supp.
1975), which provides in pertinent part:

"Any party in interest who is aggrieved by a final
order or decree of the orphans' court division, or a fi-
duciary whose estate or trust is so aggrieved, may ap-
peal therefrom to the proper appellate court.
. . ."[4]

1. The award was made by nisi decree dated May 16, 1974. Ap-
pellees, as executors under decedent's will, filed exceptions. On
August 30, 1974, the orphans' court dismissed the exceptions and
confirmed the decree absolutely.

2. See Appellate Court Jurisdiction Act of 1970, Act of July 31,
1970, P.L. 673, No. 223, art. II, § 202, 17 P.S. § 211.202(3) (Supp.
1975).

3. This issue was raised but was not decided by the orphans'
court.

4. The language in this section is identical to the language of the
statute which it replaced, the Act of August 10, 1951, P.L. 1163,
art. VII, § 771 (formerly codified as 20 P.S. § 2080.771 (1964) re-
pealed by § 3 of the Act of June 30, 1972, P.L. 508, which enact-
ed the Decedents, Estates and Fiduciaries Code).

Unless an executor has been surcharged or has been ordered to distribute more than the admitted balance in the estate, the executor is not a "party aggrieved" by the final order or decree of the orphans' court. The executor is merely a holder of the estate's assets for the purpose of administration and distribution and is not adversely affected by a decision of the orphans' court directing the distribution of those assets. *Musser's Estate*, 341 Pa. 1, 17 A.2d 411 (1941); *Kennedy's Estate*, 328 Pa. 193, 194 A. 901 (1937); *Reese's Estate*, 317 Pa. 473, 177 A. 792 (1935); *Hand's Estate*, 288 Pa. 569, 136 A. 864 (1927).

 Appellants were not adversely affected by the decree of the orphans' court in their capacity as executors. However, they were directly affected, and are "parties aggrieved," in their capacity as residuary trustees under the will and, in the case of Mary McQuay Hain, in her individual capacity as a spouse who has elected to take against the will. When a party has erroneously challenged an order or decree of the orphans' court as executor but properly could have proceeded in some other capacity, the party is entitled to retain the benefit of the appeal in the proper capacity. *Keffalas Estate*, 426 Pa. 432, 233 A.2d 248 (1967); *Stachnick Estate*, 376 Pa. 592, 103 A.2d 765 (1954); *Holben's Estate*, 299 Pa. 348, 149 A. 598 (1930); *Deakyne Estate*, 166 Pa.Super. 527, 72 A.2d 616 (1950); *Follansbee Estate*, 161 Pa.Super. 31, 53 A.2d 864 (1947); *Cheponis Estate*, 148 Pa.Super. 515, 25 A.2d 779 (1942). Although appellants may lack standing to appeal in their capacity as executors, they do have standing in their other capacities. We must therefore reach the merits of the appeal.

 Claims against a decedent's estate must be established by clear, direct, and convincing evidence. *Moore Estate*, 439 Pa. 578, 266 A.2d 641 (1970); *Nicolazzo Estate*, 414 Pa. 186, 199 A.2d 455 (1964); *Gadola Estate*, 410 Pa. 250, 188 A.2d 744 (1963); *Secary Estate*,

407 Pa. 162, 180 A.2d 572 (1962). Whether the required standard of proof has been met is a question of law and is therefore a proper issue for independent determination by this Court. *Moore Estate*, supra; *Nicolazzo Estate*, supra; *Stafford v. Reed*, 363 Pa. 405, 70 A.2d 345 (1950). However, such a review does not amount to a trial de novo of all factual matters. The appellate court must accord great weight to the findings of fact of the trial court, which saw and heard the witnesses. *Billinger Estate*, 451 Pa. 77, 301 A.2d 795 (1973); *Dart Estate*, 426 Pa. 296, 232 A.2d 724 (1967); *Cameron Estate*, 388 Pa. 25, 130 A.2d 173 (1957); *Miller's Estate*, 279 Pa. 30, 123 A. 646 (1924). Those findings of fact are conclusive if there is sufficient evidence to support them and if they are not based on a capricious disbelief of the witnesses. *Dart Estate*, supra; *Mooney's Estate*, 328 Pa. 273, 194 A. 893 (1937). See also *Heiney Estate*, 455 Pa. 574, 318 A.2d 700 (1974); *Billinger Estate*, supra; *Mintz Trust*, 444 Pa. 189, 282 A.2d 295 (1971).

 On February 25, 1970, decedent attended a meeting of appellee's executive committee to consider plans for the construction of a swimming facility. The committee had instructed its architects to design a project which could be completed for $700,000, but the lowest bid received, which included only a "roughed-in" locker room and spectators' gallery, totalled $800,000. The committee concluded that an expenditure in excess of $700,000 could not be justified and discussed elimination of the locker room and spectators' gallery as a probable alternative. At that point decedent made the statement which is the subject of this litigation.

Appellee presented four witnesses who attended the February 25, 1970 meeting. Two of the witnesses quoted decedent as saying that he would "guarantee" the additional $100,000. Another witness testified that decedent had said that he would be "responsible" for the $100,000. The last witness testified that he recalled decedent "say-

ing something to the effect" that decedent "would see to it that another $100,000 was raised."

Several months after the meeting, decedent and an official of appellee discussed decedent's pledge. Decedent assured this official that the money would be paid and made no suggestion that his obligation was in any way conditional. Moreover, decedent made two payments toward the $100,000 pledge. One such payment of $600.62 was made in January, 1971, and the other totalling $5,-000, was made in January, 1972, just a few months before his death in April, 1972.[5]

The orphans' court found: (1) that decedent's statement constituted an offer to give $100,000 to appellee if appellee would construct the pool facility with the roughed-in locker room and spectators' gallery areas; (2) that the offer was accepted by appellee; and (3) that appellee completed its obligations by contracting on March 12, 1970, for construction of the pool facility in accordance with the conditions attached to decedent's offer. The pool was constructed and completed in 1971.

Appellants emphasize that appellee's witnesses used different words in recounting what decedent said at the meeting and that the testimony has several possible interpretations. Decedent might have obligated himself merely to lead a more vigorous fund raising drive.[6] Alternatively, if decedent did assume personal financial responsibility, his obligation might have been contingent upon the inability of appellee to raise the necessary funds. Appellants argue that appellee failed as a matter of law to meet its burden of proof because of these alternative interpretations.

5. This case is therefore distinguishable from those which involved a stale claim or a claim which was not made to decedent during his lifetime. See *Nicolazzo Estate,* supra.

6. Decedent was a co-chairman of the fund raising committee for the pool project.

We find appellants' arguments to be unpersuasive. The testimony fully supports the finding of the orphans' court that decedent communicated to the people present at the February 25, 1970, meeting that he would give appellee $100,000 of his own funds if appellee would build the pool facility as decedent stipulated. Appellants did not, upon cross-examination, make any reference either to the use by the witnesses of different words to describe decedent's offer, or, more important, to any ambiguity in the meaning of the offer made by decedent at the meeting. Decedent's subsequent payments are further evidence of a definite offer to supply the necessary funds. The orphans' court, which had the benefit of observing the witnesses, was justified in concluding that appellee established its claim by "clear, direct, and convincing evidence."

Decree affirmed. Each party pay own costs.

JONES, C. J., did not participate in the consideration or decision of this case.

MANDERINO, J., filed a dissenting opinion.

MANDERINO, Justice (dissenting).

I dissent. Not one of the witnesses claims to have heard decedent *promise* to give $100,000. They used words such as "guarantee," "be responsible for," or "see to it that another $100,000 was raised." This type of language does not clearly reflect an *unconditional* promise to give. The more likely interpretation is that *if needed* he would see that the $100,000 was obtained in some way. At best, the language is subject equally to both interpretations and does not satisfy the burden of being clear, direct and convincing evidence of an offer to give $100,000. Under these circumstances, recovery by appellee required proof that the $100,000 was never obtained from any source.